JOEL W. HAMILTON v. GEORGE E. FROTHINGHAM.

[See 59 Mich. 253.]

*Pleading—Bill of particulars—New trial—Inconsistent positions.*

1. The office of a bill of particulars is to inform the opposite party of the cause of action to be relied upon, which is not specially set forth in the declaration. *Davis v. Freeman*, 10 Mich. 188; *Nugent v. Teachout*, 67 Id. 571; *Wright v. Dickinson*, Id. 580.

2. Parties finding that contracts upon which they have relied for recovery cannot be upheld in the courts are not permitted under the same pleadings and bills of particulars to retry their case upon an entirely different contract, and one entirely contradictory to the one first claimed under, even for the purpose of meeting the opinion of the Court, and squaring their case with it.

3. In this case it is held that, if plaintiff can recover at all, he must do so under the contract claimed upon the two former trials.

Error to Washtenaw. (Grant, J., presiding.) Argued May 18 and 22, 1888. Decided October 19, 1888.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Noah W. Cheever (Sawyer & Knowlton* and *William P. Wells,* of counsel), for appellant.

*John F. Lawrence ( E. D. Kinne,* of counsel), for plaintiff.

LONG, J. This action was brought in the circuit court for the county of Washtenaw, to recover for services in the sale of a printing establishment in Ann Arbor, known as the "Ann Arbor Register."

The defendant, Dr. Frothingham, in 1882 purchased the machinery and stock of the plant known as the "Ann Arbor Printing & Publishing Company," and carried on the business of job printing, and edited and published, in connection therewith, a newspaper called the "Ann Arbor Register," until the latter part of August, 1883.

Plaintiff claims that, having had some experience in selling property for other people, he was approached by the defendant sometime in April, 1883, on the subject of making a sale for him of his printing establishment. After considerable general talk, and many interviews in reference to the matter, on or about July 18, 1883, plaintiff and defendant made an agreement, by which the plaintiff was to endeavor to find a purchaser for the defendant's newspaper and printing concern; and, in case of his being able so to do, he was to have for finding a purchaser all he could get for the property over $8,000

Plaintiff claims on making this agreement he immediately wrote to one Kittredge, of Eaton Rapids, requesting him to come to Ann Arbor, and look over the property; that in response to this letter Kittredge came the next day after it was received, and looked over with Hamilton the press, machinery, stock, and other property, and was introduced by him to the defendant as a possible purchaser of it; that, after some negotiations in reference to the purchase, Kittredge said he could not pay cash entirely,

but was desirous of turning in some city property he owned in Minneapolis; and defendant consented to entertain this proposition, provided he might have an opportunity to make inquiries in reference to the real estate owned by Kittredge in Minnesota, to which no objection was made by Kittredge, and he returned to Eaton Rapids to await the result of defendant's investigations.

That when it became evident that Kittredge, in order to purchase, would have to apply this Minneapolis property towards the purchase price, defendant told plaintiff that he could not afford to pay him all over $8,000, and take the Minneapolis property at Kittredge's valuation; that thereupon plaintiff suggested to defendant that the matter could be arranged so as to meet the overvaluation on the part of Kittredge, by defendant taking out the accounts, amounting to $2,800, and valued at from $2,000 to $2,500; also the book known as "Prof. Hennequin's Book," valued at $500, and one of Prof. Vaughn's, valued at $400, and blank-books, and some stock, valued at $300 or $400,—amounting in all to over $3,000.

That the defendant, immediately after Kittredge had returned to Eaton Rapids, wrote to parties in Minneapolis in reference to the value of the real estate there owned by Kittredge, and a few days after, and on July 27, 1883, he received an answer to his inquiries, and on July 29 a new contract was entered into between the defendant and plaintiff, in which it was agreed that, if plaintiff could induce Kittredge to buy the printing establishment after the defendant took out the accounts, books, etc., the defendant would take in part payment therefor the Minneapolis property at a valuation of $4,000, and pay the plaintiff $1,000 as his commission; that Hamilton immediately entered into correspondence with Kittredge, and in the course of two weeks or thereabouts he induced Kittredge to again come to Ann Arbor, and

consider the new proposition of the defendant; that the sale was finally made through the efforts of the plaintiff on the terms above stated, to wit, Kittredge to pay $1,500 in cash, put in the Minneapolis real estate at $4,000, and give a mortgage to the defendant on the property purchased for $3,500, making in all $9,000; that the defendant took out the property above mentioned, valued at over $3,000. That shortly after the sale plaintiff saw defendant, and requested payment of $1,000 under the contract; and defendant declined to pay him, and Hamilton at once brought suit.

The case was first tried before Judge Joslin, in the Washtenaw circuit court, and the plaintiff obtained a verdict. A new trial was granted, and Judge Jennison heard the case, and the jury rendered a verdict for plaintiff for $1,000. Judgment was entered thereon. This judgment was reversed by this Court, and is reported in 59 Mich. 253 (26 N. W. Rep. 486).

It appears from the record of that case that plaintiff's claim on the former trials was that defendant agreed to give plaintiff all that he should receive beyond $8,000, and that the property was sold for the sum of $9,000; that on the final arrangement a sale was made for a consideration which included some lands in Minnesota, which were called by the purchaser as worth $4,000, which at that rate would bring the whole price up to $9,000. The parties were directly at issue upon the fact of any agency of plaintiff by defendant's employment in this sale, as well as to several of the more important facts bearing on the merits of the case. The action was on the common counts. No bill of particulars was presented in that record.

From the testimony on both sides, it appeared on the former record that if there was any employment at all it was for so much as exceeded $8,000 on the sale. And

this Court held that a very large part of the testimony, consisting of the opinions of witnesses as to what commission and compensation would be proper in such a case to a land broker, was erroneously admitted.

This Court ( at p. 255 ) further said, in the absence of a bill of particulars,—

" We are unable to say whether the claim set out in it was or was not one which should have been declared on specially, but it is clear that damages for preventing the plaintiff from carrying out an express contract could not be recovered under the common counts. And we do not see on what basis there could be any estimate of the value of services in introducing a purchaser with whom defendant made his own terms, which could be sued for on a *quantum meruit*. All of this part of the case, and the instructions allowing such an inquiry, must be regarded as involving error."

After reversal in this Court the case was again tried at the October term, 1887, in the circuit court, and a verdict of $1,280 rendered in favor of the plaintiff. Judgment was entered thereon, and the defendant brings the case to this Court by writ of error.

At the close of the testimony defendant's counsel asked the court to charge the jury as follows:

" 1. The plaintiff cannot recover under the pleadings and evidence in this case.

" 2. The plaintiff cannot recover in this action on the agreement for a cash sale made July 18, 1883.

" 3. If the jury shall find that an agreement was made between the parties after July 18, 1883, and that such agreement was that plaintiff should undertake to effect a sale of the property in question, and defendant to pay him all that should be realized on such sale over and above $8,000, then the plaintiff cannot recover in this action.

" 4. If the jury believe that the plaintiff was authorized to sell the property in question according to the agreement of 18th of July, 1883, and that plaintiff was prevented from making such sale, or that agreement was

terminated by the act of defendant, plaintiff cannot recover in this action.

"5. If the jury find that the alleged promise to pay $1,000, relied on as plaintiff's ground of recovery, was in any way dependent upon a sale of the property in question, the plaintiff cannot recover in the present action.

"6. If the jury find that, in order to fix plaintiff's claimed compensation at $1,000, a sale of the property in question was to be consummated, plaintiff cannot recover in this action.

"7. If the jury find that plaintiff was instrumental in making the sale, and may have rendered valuable services for the defendant, still this fact will not entitle him to recover in this action. He must recover, if at all, a fixed compensation of $1,000.

"8. That under the bill of particulars in this cause, and the testimony given in the trial, plaintiff cannot recover.

"9. This case having been twice in this court, and having been carried to the Supreme Court, upon the claim upon the part of the plaintiff that if there was any employment at all it was for so much as exceeded $8,000 on the sale, plaintiff cannot now change his cause of action, and recover upon a new and different contract, wherein he was to receive a fixed compensation of $1,000 cash for the performance of certain services."

The court refused to give these requests in charge to the jury, except as covered by the general charge, and upon such refusal the defendant assigns error. The court instructed the jury that there were three principal questions for the jury to pass upon in arriving at a verdict in this case:

"1. Was such a contract made as plaintiff claims?

"2. If made, was it revoked by defendant?

"3. If not, did the efforts on the part of the plaintiff, in pursuance of the contract, result in effecting a sale between defendant and Kittredge?"

. And it was upon this theory that the case was submitted to the jury for their consideration.

The bill of particulars upon which the plaintiff relies for recovery is as follows:

"To services in July and August, 1883, in procuring a sale of the Register property to Kittredge for said defendant, one thousand dollars."

To this bill of particulars was attached a notice to the defendant that—

"The following is the bill of particulars of the plaintiff's demand in this cause, and for the recovery of which this action is brought."

On the trial of the case it was admitted by plaintiff's attorney that the foregoing was the bill of particulars served in the cause before the first trial.

From the former record presented in this Court, it appears that the claim then made by the plaintiff was that he acted as agent for the defendant in the sale of this property, under an agreement with him that he (plaintiff) should have as compensation all he could obtain for it over $8,000, and that he might offer the property for sale at $9,000; that in pursuance of this agreement he procured one Kittredge, who was at Eaton Rapids, to come to Ann Arbor, and look the property over; that Kittredge came, when it was learned that Kittredge desired, if he took the property at $9,000, to turn out certain real estate in Minneapolis in exchange, which he valued at $4,000; that defendant desired time to investigate the value of the Minneapolis property, which was granted by Kittredge; that thereupon defendant told the plaintiff he could not afford to take the Minneapolis property, and pay him (plaintiff) $1,000, when plaintiff advised him to make another agreement with Kittredge, and not give him the whole property; that there were some things which could be kept out, and make the difference. The talk was that the accounts, amounting to some $2,000 or $2,500, Prof. Hennequin's book, worth about $500, and Prof. Vaughn's book, worth from $400 to $500, and some blank books and stock, worth in all about $3,000 to $3,500,.

could be kept out; Kittredge to take the balance of the property, and defendant to take the Minneapolis property in exchange therefor. This proposition was considered by the defendant, and, after having investigated the value of the Minneapolis property, Mr. Kittredge came again to Ann Arbor, at plaintiff's request, and there the exchange was made, on or about August 17, 1883, by Kittredge taking the property, except that above enumerated, and the defendant taking in exchange the Minneapolis property, valued at $4,000, a mortgage back on the property sold, for $3,500, and a cash payment of $1,500; thus making what was called $9,000. After the sale was made plaintiff made demand for his compensation of $1,000, ·the amount he claimed defendant had received over the $8,000. This the defendant refused to pay.

The defense was—

1. That the plaintiff did not effect the sale, but that the negotiations were carried on by defendant himself, and sale made by him.

2. That defendant simply made plaintiff an offer to sell the property at $8,000 cash; that this offer was made on Wednesday, and was to be kept good until the Friday following; and that he gave plaintiff no authority to make an exchange for other property, and did not make him his agent to negotiate an exchange.

3. That plaintiff ·having failed to effect the sale of the property at $8,000 cash, within the time limited, defendant had the right to withdraw the offer, and terminate the agency, if one existed; and if he did so, and subsequently effected a sale of the property himself, the fact that the purchaser was one that the plaintiff introduced, and ·that the sale was in some degree aided by the plaintiff's previous unsuccessful efforts to effect a cash sale, would not entitle the plaintiff to commissions on the sale made.

4. That the plaintiff's claim being for the amount realized over $8,000 cash, the plaintiff could not recover anything unless the property received in exchange exceeded in value, in cash, $8,000.

5. That inasmuch as no actual value of the Minneapolis

property had been proven, no recovery could be had, as commissions could only be based upon actual value, and not at what the Minneapolis property was called in the trade.

As appears from the former record, plaintiff's counsel requested the court to charge the jury,—

"If the jury find from the evidence that the defendant agreed with the plaintiff to pay him all over $8,000 which might be obtained for the property,    *    *    *    and find that the plaintiff was the means of making such sale of such property to Kittredge for $9,000, or what was taken as $9,000, then the plaintiff is entitled to recover $1,000."

And it appears by that record the court charged the jury, in accordance with plaintiff's request, as follows:

"If you think that defendant did employ plaintiff to sell the property in question, and agreed that he should have for his services all he could get over $8,000, that through his efforts he induced Kittredge to enter into negotiations with defendant for the purchase of said premises, and that it finally resulted in a sale for $9,000 in the manner stated, then plaintiff is entitled to recover $1,000."

The further claim was made by plaintiff on the former trial that, if the contract to pay plaintiff all he could get over $8,000 had not been complied with by plaintiff, yet if the defendant consented to allow the plaintiff to continue negotiations for the sale, and if such negotiations were carried on by plaintiff with his knowledge and permission, and finally resulted in a sale, then plaintiff is entitled to recover what his services were reasonably worth. The court adopted this theory also, and charged the jury substantially as requested. It was in view of these facts presented by that record that this Court (at page 255) held that—

"From the testimony on both sides, it appears that, if there was any employment at all, it was for so much

as exceeded $8,000 on the sale.   There was no testimony tending to prove an agency without fixed compensation, or an agency to do anything but sell the property.   A very large part of the testimony consisted of opinions of witnesses as to what commissions and compensations would be proper in such a case to a land-broker, and all of this was erroneously admitted.   It was not only irrelevant, but it showed that the price which plaintiff claims he was to receive was very much beyond any usual commission, and could not be based on anything but an express contract; * * * and we do not see on what basis there could be any estimate of the value of services in introducing a purchaser with whom defendant made his own terms, which could be sued for on *quantum meruit*.   All of this part of the case, and the instructions allowing such an inquiry, must be regarded as involving error.   * * *   So far as we can infer from the testimony, we have very great doubt whether there was enough to go to the jury indicating that defendant ever made any promise to allow plaintiff the excess over $8,000 upon any but a sale on a cash basis."

As appears by the former record presented to this Court, the whole claim on the part of the plaintiff was for the amount the property sold for above $8,000, and, if that claim was not established, then, having brought about the sale, he was entitled to recover what his services were reasonably worth; and a large amount of testimony, consisting of the opinions of witnesses as to what commissions and compensation would be proper in such a case to a land-broker, was introduced.

Nowhere throughout the whole record does it appear (and from the record it appears that all the testimony was returned) that after July 18, 1883, a new contract was made by defendant with plaintiff to allow him $1,000 as a fixed compensation if plaintiff could induce Kittredge to buy the printing establishment after the defendant took out the accounts, books, etc., and that the defendant would take the Minneapolis property at $4,000, the mort-

gage of $3,500, and the cash payment of $1,500.    Such
an arrangement or agreement is not even hinted at in the
record, either in the testimony of the plaintiff, the requests
to charge, or in the charge of the court.

In the present case the whole claim of plaintiff for
recovery is stated by the court in its charge to the jury
as follows:

" The plaintiff claims that some days subsequent to this,
this cash arrangement having fallen through, a modified
agreement was made between him and the defendant,
Frothingham, and that by that arrangement the price was
$9,000; that Kittredge was to pay Frothingham $9,000,
$4,000 of which was to be by the sale of land in Minne-
apolis, $1,500 in cash, $3,500 in a mortgage back upon
the stock, and that he (Kittredge) was to receive the
property of the Register, taking out the accounts, Dr.
Vaughn's book, Prof. Hennequin's book, and certain
blank-books that were in the establishment; and it is
conceded that this arrangement was finally carried out,
and the sale of the property on that basis made.    On this
agreement, if at all, the plaintiff in this case must
recover; and the plaintiff claims that he was to receive
$1,000 for negotiating this sale."

Further on in the case the court instructed the jury:

" Plaintiff has sued under the contract for $1,000.    He is
entitled to receive this or nothing.    There is no ground
—no testimony—in this case for any other claim than
that; and you, of course, will not be influenced by the
fact that you cannot apportion this amount.    It is not
a suit for apportionment; it is a suit to recover upon the
contract that it is claimed has been made.    Plaintiff has
planted himself in this action to recover that sum, and by
that he must be bound."

Plaintiff went through two trials, and was under exami-
nation from his own counsel, and cross-examination by the
opposing counsel, and was asked by each to detail the
whole transaction of his arrangement with defendant as
to his compensation for making this sale, and upon each

of those trials he fixed the agreement as made July 18, 1883, and his agreed compensation or commission to be the excess of $8,000 realized from the sale; and at the same time his counsel making the claim on each of these trials that if this arrangement was terminated by the defendant, by reason of the sale not being made or completed within the time limited, then the plaintiff would be entitled to recover a reasonable compensation as commission, by reason of defendant permitting him to go on with the negotiations thereafter so that sale was completed, though not on a cash basis.

It is a somewhat peculiar circumstance that not until the third trial, and after this Court had said there was grave doubt whether there was enough to go to the jury indicating that defendant ever made any promise to allow plaintiff the excess over $8,000 upon any but a sale on a cash basis, then for the first time in the history of the case the plaintiff remembers that some other and different contract had been made as to his compensation; not the contract of July 18, 1883, under which he claimed to recover upon the other trials; not a compensation of the excess over $8,000; but a contract made some time subsequent to July 18,—one made about July 29,—and for a certain and specific sum,—the sum of $1,000,—a certain fixed and definite amount; this claim made under the same pleadings, the same bill of particulars, as in the former trials.

The declaration was upon the common counts. A bill of particulars was demanded and furnished before pleading, and before the first trial.   The office of a bill of particulars is to inform the opposite party of the cause of action to be relied upon, which is not specially set out in the declaration. *Davis v. Freeman,* 10 Mich. 188.

It is probably true that the single item,—

"To services in July and August, 1883, in procuring a sale of the Register property to Kittredge for said defendant."—

Would support a cause of action upon the *quantum meruit,* and upon an express contract to pay all that should be realized above a certain sum in the sale of the property. Even if it were true that such a bill of particulars might support a cause of action upon an express contract to pay $1,000 for furnishing a purchaser of the property upon specified terms, yet the plaintiff himself, by his own testimony and claims upon the two former trials, had given the interpretation to it that it was for services rendered in procuring a purchaser for this property, and to recover the amount for which it sold in excess of $8,000, or for what his services were actually worth. This construction, to which plaintiff had adhered upon two trials, the defendant had a right to expect would be the one given to it upon the third trial. The plaintiff, having claimed a recovery under it upon one express contract, must be estopped from seeking a recovery upon any other contract under the same item. The bill of particulars in no way indicates to the defendant that the plaintiff seeks to recover upon an express contract to pay a fixed sum for finding a purchaser of the property upon definite terms. If the plaintiff sought to recover upon any such contract, there should have been some reference to it in the bill of particulars.

Even if this were not so, the plaintiff cannot be permitted to take a position now wholly inconsistent with that taken on the former trials. The contract now claimed under is wholly inconsistent with that claimed upon the former trials. If this contract was made, then the one upon which the former recovery was had did not exist, and no recovery could have been had thereunder. If the contract was to pay all over $8,000, then an express

contract to pay a certain and specific sum did not exist.

If such inconsistent positions were allowed to be taken in courts of justice, there would be no end to litigation. Parties finding that contracts upon which they have relied for recovery cannot be upheld in the courts are not permitted under the same pleadings and bills of particulars to retry their case upon an entirely different contract, and one entirely contradictory to the one first claimed under, even for the purpose of meeting the opinion of this Court, and squaring their case with it.[1]

There is great doubt, on the facts shown by this record, whether there was any testimony supporting plaintiff's theory to go to the jury, that the sale was made by his efforts pending his employment, if any such employment ever existed. From the view we take of this case, it is not necessary to discuss the other questions raised. The plaintiff, if he is entitled to recover at all, must do so under the contract claimed upon the two former trials.

The judgment of the court below must be reversed, with costs, and a new trial ordered.

The other Justices concurred.

---

[1] Counsel for appellant cited, in support of this proposition, *Thompson v. Howard*, 31 Mich. 309; *Wetmore v. McDougall*, 32 Id. 278; *Nield v. Burton*, 49 Id. 53; *Berringer v. Cobb*, 58 Id. 559.