JAMES H. PELTON v. CHARLES SCHMIDT ET AL.

[See 97 Mich. 231.]

*Res judicata—Credibility of witness—Negligence—Dangerous premises—Invitation—Contributory negligence—Compromise—Evidence.*

1. The plaintiff, a teamster, after delivering some merchandise at the back door of defendants' store, started towards the desk near the middle of the room to get a receipt for the goods, and was injured by falling through a trap-door into the cellar. Upon the first trial the plaintiff's own testimony negatived any express or implied invitation on the part of the defendants to enter the store from the rear for the purpose of securing a receipt for the goods, and a judgment in his favor was reversed on that ground, and a new trial ordered. On the second trial the plaintiff's testimony tended to show such an invitation from the defendants. And it is held that, while the jury might properly consider such change in plaintiff's testimony as affecting his credibility, it is not the province of the Supreme Court to say that plaintiff must stand or fall by his testimony on the first trial where there has been a legitimate opportunity for a change therein, and that by ordering a new trial the subject was relegated to the jury.

2. Plaintiff testified that he had been instructed by the defendants to deliver goods at the back door of the store, and that it had been his custom to pass through the store to get his receipts. And it is held that if the defendants permitted this practice to grow up without protest, so that it became the usual course of dealing, plaintiff was justified in supposing that it was expected that he should so enter the store, and, as the testimony was conflicting on this branch of the case, the question was properly left to the jury.

3. It was lawful for defendants to keep and use the trap-door, subject to the duty on their part to properly guard it so as to avoid injury to persons (except employés about the premises, or persons having notice of the existence of the trap-door) who should lawfully enter the portion of the store where it was located, upon their express or implied invitation, upon business concerning the defendants.

4. Plaintiff testified that he did not know of· the existence of the trap-door; that he did not look in the direction of the opening, which he came suddenly upon as he came around a pile of goods. And it is held that, if this was so, it was much as though plaintiff had fallen into a pit immediately upon opening a door; that if he had no reason to expect this trap-door, and did not suspect its existence, he was not required to be watching for it, and therefore the question of his contributory negligence was one for the jury.

5. Where in a personal injury case the defendants introduce evidence tending to show a compromise of plaintiff's claim, which plaintiff denies, and plaintiff's counsel, in his argument to the jury, claims that the interview had with the defendants about the matter was evidence that the defendants had perpetrated the wrong complained of, it is error for the court to refuse to instruct the jury, at the request of the defendants, that such proposed compromise should not be considered by them as an acknowledgment of any liability on the part of defendants.

Error to Kent. (Grove, J.) Argued October 23, 1894. Decided March 19, 1895.

Negligence case. Defendants bring error. Reversed. The facts are stated in the opinion, and in 97 Mich. 231.

*Henry J. Felker* (*Albert Crane,* of counsel), for appellants.

*McGarry, McKnight & Judkins,* for plaintiff.

HOOKER, J. A statement of the principal facts in this case will be found in the opinion filed upon a former review of the case, reported in 97 Mich. 231.

Upon a second trial the plaintiff testified that he had been in the habit of going through defendants' store from the back door to the desk, or other places in the store, to get his book receipted, after delivery of goods at the rear of the store, where he had been directed to leave them at all times. One or more other truckmen gave similar testimony. His counsel now claim that this evidence brings the case within the rule stated in the former opinion.

Upon the first trial there was no evidence tending to show any express or implied invitation to enter the store from the rear. The plaintiff testified that he had never been in the store from that way before the occasion of his injury, and it appeared from other testimony that it was the intention of the defendants to have the goods inspected and receipted for at the back door, when delivered. Defendants' counsel contend that the plaintiff is concluded by his former testimony, and that he should not be allowed to recover by reason of evidence flatly contradictory of his former testimony. Decisions of this Court in cases brought here by writ of error are conclusive upon the parties, so far as the law is concerned, whenever the same state of facts is presented; but upon different facts other principles may apply. If parties change their testimony, the jury may properly consider the fact; but it is not for this Court to say that a party must stand or fall by his former testimony, where there is any legitimate opportunity for a change in the testimony. It may, perhaps, be said that there was no such opportunity here, but by ordering a new trial this Court relegated the subject to the jury.

The important question is whether the trial court should have held that the evidence conclusively showed that the plaintiff was a trespasser, or at most a mere licensee. The record shows that the plaintiff was a truckman for a wholesale house in the city, who delivered goods to the defendants at their store for his employer. He was required (presumably by his employer) to obtain defendants' receipts for the goods delivered. He had been instructed by the defendants not to deliver at the front door, but to go to a back door, which he reached through an alley. He says that it was his custom to go through to the clerk to get receipts, entering at the back door. Other truckmen did the same. This evidence was contradicted, but it was for the jury to pass upon, if it was sufficient to make the

defendants liable if found true. It cannot be said that this is a case where the plaintiff visited the store solely for his own accommodation, and crossed, for his own purposes, a portion of the premises kept by the defendants for their sole private use, without encouragement or permission. The evidence tends to show that both understood that he was not to deliver goods at the front door, and that it was a part of his business to get a receipt for the goods. If it be said that he should have had his goods inspected and have received his receipt at the door, it may be answered that the defendants, and not the plaintiff, were interested in the inspection. Doubtless he was satisfied when he obtained the receipt. If, through confidence in the truckmen or for other reasons, the defendants relaxed their vigilance, and were content to receipt for the goods upon presentation of the book, without inspecting the goods, and without protest allowed the practice to grow up of receipting in the store, knowing that the truckmen entered and retired by the back door, there is some room for an inference of consent. There is no force in the contention that the plaintiff should have gone around by the front door, for the reasons—*First*, that defendants do not say that it was expected, but, on the contrary, that it was not expected, for they desired to receipt at the back door; *second*, that it would have been a roundabout and unnatural way to go, in the absence of instructions to do so, and there is no pretense that such were given. If the defendants permitted this practice to grow up without protest, so that it became the usual course of dealing, the plaintiff was justified in supposing that it was expected that he would enter from the rear door. It was therefore proper to leave the question of invitation to the jury.

The defendants might lawfully keep and use the trap-door in their store, subject to their duty to properly guard the same to avoid injury to those persons who should law-

fully come into that portion of the store where it was located. This was a duty owing to all persons lawfully there under an express or implied invitation from the owners, upon business concerning the defendants, excepting employés about the premises, or persons having notice of the existence of the trap. In Shear. & R. Neg. § 719, it is said that—

"Such openings, unless far removed from those parts of the building which are lawfully used by persons *not having actual notice* of their existence, should be thoroughly fenced in, so that no one exercising ordinary prudence could fall through them. If it is impracticable to keep up a fence, as it sometimes is, for example, during the hoisting and delivery of goods through a hoistway, the person using it is bound to give actual notice of the danger to every person lawfully approaching the place, or, in default thereof, he is liable for all injuries resulting therefrom."

This language was quoted with approval by Mr. Justice CAHILL in the case of *Engel v. Smith*, 82 Mich. 1, 5, where it was held that the opening of a trap-door in a frequented place imposed the duty of guarding it, not to do which constituted negligence as matter of law. The trap-door mentioned in that case was in a back room, through which the plaintiff was accustomed to pass to and from his room.

The character of the plaintiff's mission upon the premises does not except him from the rule. He was not an employé of the defendants, working in and about the store, and therefore bound to assume the risks incident to the character of the premises. He went there on business of the defendants and his employer, by direction of the latter. In that respect the case resembles that of *Indermaur v. Dames*, L. R. 1 C. P. 274, and L. R. 2 C. P. 311, where this subject is discussed. See *Cornman v. Railway Co.*, 4 Hurl. & N. 781; *O'Callaghan v. Bode*, 84 Cal. 489. The jury having found the invitation to enter and cross the

premises, it was the duty of the defendants to give plaintiff notice of the trap, if he was not already aware of its existence,—a fact that the jury might well have found from the testimony, if they did not. The question was, however, for them, and not for the court, to decide, being disputed.

The further question of contributory negligence is raised, it being contended that such negligence appears from the undisputed facts. These facts are said to be, in substance:

1. That the plaintiff knew of the existence of the trap-door.

2. That it was a light day, and plainly visible.

3. That he used no care in avoiding it, and did not even look where he was to step.

The first of these propositions is not undisputed, as the plaintiff testified that he did not know of its presence. His testimony probably justifies the statement that he did not look in the direction of the opening that he came suddenly upon as he came around the pile of goods, and it may not have been visible until his foot was upon the edge of the opening in the floor. If so, it was much the same as though he had fallen into a pit immediately upon opening a door. If he had no reason to expect this hatchway, and did not suspect its existence, as his testimony indicates, the law does not require him to be watching for it. When one comes suddenly upon an unexpected opening in a passageway,—one which he has no reason to anticipate, and one which the law makes it the duty of the owner to guard or give notice of,—the case is different from one where a person walks directly forward into an opening, which he would have seen for some distance had he been looking before him as he walked, and where ordinary care could not have failed to discover it. *Hutchins v. Sleigh Co.*, 61 Mich. 252; *Tousey v. Roberts*, 114 N. Y. 312; *Engel v. Smith*, 82 Mich. 6. We think, therefore, that the question was one for the jury.

But one other question will be noticed.   Evidence was introduced by the defendants tending to show a com- promise of the claim of the plaintiff, which was disputed by the plaintiff.   An interview about the matter was con- ceded, and the plaintiff said that the defendant Schmidt admitted that they were to blame.   In the argument, counsel for the plaintiff claimed that this visit was evi- dence that the defendants had perpetrated a wrong. Counsel for the defendants asked the court to charge the jury:

"That any proposed compromise should not be consid- ered by the jury as an acknowledgment of any liability to the plaintiff on the part of the defendants."

This instruction was not given.   The parties disagreed about what occurred at this time, and the question, "What was defendant there for, if not liable?" would naturally occur to the jury.   They should have been told that a man may safely offer a compromise, and that it is no evi- dence of liability.   Counsel say that this was "error with- out injury," because the defendants' negligence was indis- putable; but this claim loses sight of the fact that the plaintiff's contributory negligence was involved in the ques- tion of liability.

For this reason we feel constrained to reverse the judg- ment.   A new trial will be directed.

The other Justices concurred.