HUMPHREY *v.* EDDY TRANSPORTATION CO.

1. Trial—Change of Theory.

    On the first trial of an action for commissions on the sale of a boat, counsel, on being asked to elect between alleged inconsistent items of the bill of particulars, claiming commissions for finding a purchaser in the D. company, for making a sale to the D. company, and for finding a customer in the S. company, respectively, stated that the items set out were all parts of one transaction; that plaintiff found a purchaser in the S. company, and made a sale to the D. company. He elected to recover upon finding a purchaser and making a sale to the D. company. Upon a second trial, counsel claimed on a transaction in which the D. company was the nominal, and the S. company the real, purchaser. *Held,* not a change of theory.

2. Principal and Agent—Commissions.

    Where the general manager of a transportation company was authorized to arrange for the sale of its property, and to agree upon the commissions to be paid to the agent for bringing about the sale, the company cannot avoid paying the commissions on the ground that the agent was himself interested in the company to which the sale was made, and that a third company was contributing a bonus towards the purchase price, if knowledge of these facts was brought home to the general manager before the sale.

Error to Wayne; Frazer, J. Submitted November 4, 1897. Decided December 21, 1897.

*Assumpsit* by Moses W. Humphrey against the Eddy Transportation Company for a commission on the sale of boats. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*De Forest Paine* (*John D. Conely,* of counsel), for appellant.

*John H. Goff* and *John C. Shaw,* for appellee.

Long, C. J. This case was in this court at the October term, 1895, and is reported in 107 Mich. 163. The facts

as they appeared by that record are fully set out in that opinion, and need not be restated. It was held that the court should have directed a verdict in favor of the defendant. The judgment was reversed, and a new trial ordered. A new trial has been had, and the court below directed verdict in favor of defendant. Plaintiff now brings error.

It is contended by counsel for defendant that on the present trial the plaintiff changed his theory, and adopted a theory not set out or claimed under in the former trial, in that on the former trial plaintiff sought to recover on a sale to the Detroit Dry-Dock Company, while in the last trial it was contended that the Dry-Dock Company was only a nominal purchaser, and that the Sulphite Fibre Transportation Company was the real purchaser. It appears that on the former trial the court asked plaintiff to make an election, as the bill of particulars claimed:

(1) Commissions for finding a purchaser in the Detroit Dry-Dock Company for the boats specified_____ $1,000
(2) Commissions upon the sale of the boats to the Dry-Dock Company _____ 1,000
(3) For finding a customer for the boats specified in the Sulphite Fibre Transportation Company____ 1,000
(4) Upon account stated_____ 1,000

Counsel at that time told the court that he saw nothing inconsistent in the bill of particulars, and stated:

"I further claim that this is all part of one transaction. Your honor will notice that I charge, in one, I found a purchaser in the Sulphite Fibre Transportation Company, and made a sale to the Detroit Dry-Dock Company."

Being ordered by the court to elect, counsel then stated:

"I elect, first, to recover upon the account stated. I elect, second, to recover upon the item of finding a purchaser and making a sale to the Detroit Dry-Dock Company."

In the present trial, counsel replied, when called upon to state his theory of the plaintiff's case, that he claimed upon a sale to the Sulphite Fibre Transportation Company, as the other sale to the Dry-Dock Company was not a real

sale, but a nominal one. His claim was that it was a transaction wherein the Dry-Dock Company was the nominal purchaser, and the Sulphite Fibre Transportation Company was the real purchaser; and he stated:

" We are claiming only commissions on that transaction, in which one company was the nominal, and the other the real, purchaser."

It is well settled that a plaintiff cannot maintain inconsistent positions; that is, he cannot commence and prosecute a suit upon one theory, and then abandon that theory, and adopt another entirely inconsistent with the first, when the assertion of the latter would positively negative the former. *Hinchman* v. *Weeks*, 85 Mich. 535; *Hamilton* v. *Frothingham*, 71 Mich. 616. But there was no such "change of front" in the present case. The statement and election on the former trial clearly disclosed that the plaintiff sought to recover for a sale of boats in which the Detroit Dry-Dock Company was not the real purchaser. The facts appearing upon the former trial clearly showed what the arrangement was, and the reason the Detroit Dry-Dock Company took the bill of sale from the Eddy Transportation Company, and on the same day made the bill of sale to the Sulphite Fibre Transportation Company. The defendant could not have been taken by surprise on the last trial by the position now taken by the plaintiff. The bill of particulars sufficiently apprised the defendant of the claim made. The object of the rule that a party cannot proceed under one theory, then change that theory, and proceed under another entirely different from the first, is to prevent fraud. The contention of counsel cannot be sustained.

But counsel for defendant contend that it appears in the present case, as it did on the former trial:

1. That there was no full and open statement to the defendant by the plaintiff of the interest which the plaintiff had in the Sulphite Fibre Transportation Company.

2. That no notice or disclosure of any kind was made to the officers or agents of the defendant company that

there was to be any bonus paid by the Detroit Dry-Dock Company.

When the case was here before, it was said:

"Plaintiff, as agent for defendant, for whom he was bound by law to obtain the best price possible, was in reality purchasing for himself. He therefore had a personal interest hostile to the interest of his principal. The law required him to disclose fully to his principal the actual situation, his own interest, and the circumstances of the deal between the Sulphite Company and the Dry-Dock Company; but he gave no testimony to show that he did so. The *onus probandi* was upon him."

Upon the former trial, as set forth in the former opinion, the plaintiff testified that he informed his (the Sulphite) company that the boats were cheap at $120,000, and that early in the negotiations the Dry-Dock Company offered the Sulphite Company a bonus of $5,000 towards the purchase, which was subsequently reduced to $2,500. It also appeared in that record that none of these facts were communicated by the plaintiff to the defendant. In the present trial, the contention of counsel for plaintiff is that there is evidence given by the plaintiff showing that the defendant company, or its officers and agents, were fully informed of the interest which the plaintiff had in the Sulphite Company, and that the Dry-Dock Company was to pay this bonus.

It appears that Capt. Shaw was the general manager of the defendant company during the winter of 1891–92. Mr. Eddy, of the defendant company, who finally closed the deal, testified that Capt. Shaw notified him that the plaintiff was authorized to sell the boats on commission, and that he (Shaw) had agreed to pay him $1,000 if he sold them. When the transfers were made, on February 27, 1892, it appears that Mr. Eddy knew that the sale was being closed to the same parties to whom Mr. Humphrey had been attempting to make the sale. He knew when he received the telegrams from Mr. McVittie, under date of February 25th, that Lindsay & Co. was the real purchaser. He had before that met Mr. Ortman and Mr. Paine,

of the Sulphite Company, in the Hammond Block, and talked with them about the sale of the boats, but did not come to any terms. During his examination as a witness on the present trial, he was asked: "Didn't you know that Mr. McVittie, who signed this telegram [referring to telegram of February 25th], was telegraphing you about the same people you had met at the Hammond Building?" Answer: "I had no doubt about that." This telegram stated: "I will close with Lindsay & Co. in the morning on the basis of your splitting the difference," etc. The other telegram also referred to Lindsay & Co. as the purchaser. From this it appears that Mr. Eddy, at the time the contract of sale was closed and the transfer made, knew that the Dry-Dock Company was not the real, but the nominal, purchaser only, and that the telegrams had reference to parties with whom he had talked about making a sale before that time.

It also appears by the present record that Charles L. Ortman was called as a witness by the plaintiff. He was not sworn on the former trial. He testified that he was a member of the Sulphite Fibre Transportation Company, composed of Mr. Lindsay, Mr. Paine, Mr. Humphrey, and himself; that Mr. Paine, the plaintiff, and himself had several meetings with Capt. Shaw, who represented the defendant company, and in one of those talks Shaw was told by the plaintiff that the Dry-Dock Company would pay a bonus of $5,000; that later he had an interview with Mr. Eddy, in the presence of Capt. Shaw, in which Mr. Eddy was informed that the Dry-Dock Company would pay a bonus of $2,500 if Lindsay & Co. bought the boats; and that during this interview the plaintiff stated he was to have a commission of $1,000 for making the sale. Mr. Ortman further testified: "We told Mr. Shaw who composed the Sulphite Company,— that myself, Lindsay, Paine, and Humphrey were the parties;" that this conversation with Capt. Shaw was about the 18th of February.

The authority of Capt. Shaw to make the sale and pay

the commission of $1,000 to the plaintiff is not denied. Under the arrangement made by plaintiff with Capt. Shaw, all that plaintiff was to do to earn his commissions was to bring the parties together. It is, however, contended by counsel for defendant that the sale talked about between Shaw and plaintiff was dropped, and a new arrangement made through McVittie. We think this cannot be said, under the testimony of Mr. Eddy himself (who was president of the defendant company); for he understood, when the sale was finally closed, that it was to the same parties with whom he talked in the Hammond Block; that is, Ortman, Paine, and plaintiff. The plaintiff testified that the negotiations did not end, but that they merely rested; and there is nothing in the record showing that the agency of the plaintiff was ever revoked. It is true that Mr. Eddy testified that he knew nothing of this bonus by the Dry-Dock Company, or the plaintiff's connection with the Sulphite Company; but Ortman testified that Shaw was told of the bonus, so that question was one for the jury. We also think the question should have been submitted to the jury whether Mr. Shaw, the general manager of the company, was told on or about the 18th of February that the plaintiff was a member of the Sulphite Company. If Mr. Shaw knew this, it was the knowledge of the company, and it could not now be heard to say that it was being deceived by the action of the plaintiff. This testimony of Mr. Ortman now raises questions of fact which were not presented on the former record; and the following requests to charge presented by counsel for plaintiff should have been given:

"1. The jury is instructed that if, at the office of Mr. Ortman and in the presence of Capt. Humphrey, a conversation was had in which Ortman, Humphrey, and Mr. Charles A. Eddy participated, and that Eddy was, during such conversation, informed either by Ortman in the presence of Humphrey, or by Humphrey himself, that Humphrey was to receive a commission of $1,000 for making the sale, and that the Detroit Dry-Dock Company was to contribute the sum of $2,500 towards the price of

the boats, then this is the same as if Humphrey himself stated these things to Mr. Charles A. Eddy.

"2. The jury is instructed that if, at the office of Mr. Ortman and in the presence of Capt. Humphrey, a conversation was had in which Ortman, Humphrey, and Capt. Shaw participated, and that Shaw was, during such conversation, informed either by Ortman in the presence of Humphrey, or by Humphrey himself, that Humphrey was to receive a commission of $1,000 for making the sale, and that the Detroit Dry-Dock Company was to contribute $2,500 towards the price of the boats, then this is the same as if Humphrey himself had stated these things to Capt. Shaw.

"3. The jury is instructed that if Mr. Ortman informed Capt. Shaw that Humphrey was to receive a commission of $1,000 for making the sale, and that the Detroit Dry-Dock Company was to contribute the sum of $2,500 towards the price, this is the same as if Capt. Humphrey himself told the same to Capt. Shaw.

"4. If the jury find that Charles A. Eddy, at the time of the transfer, knew from telegrams with the Detroit Dry-Dock Company, or from conversation with any one or more of the officers of the Sulphite Fibre Transportation Company, or from such telegrams and conversation combined, that the Detroit Dry-Dock Company was to contribute the sum of $2,500 towards the price of the boats, then such knowledge must be regarded as equivalent to a direct communication thereof by Humphrey to said Charles A. Eddy.

"5. If the jury find that all the facts and circumstances concerning the connection of Capt. Humphrey with the Sulphite Fibre Transportation Company, including the proposal of the Detroit Dry-Dock Company to contribute $2,500 towards the price, were known to Capt. Shaw or Mr. Eddy, then the jury is instructed to render a verdict for the plaintiff."

These were refused.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.