CONNOR *v.* LAKE SHORE & MICHIGAN SOUTHERN RAIL-
WAY CO.

1. ESTOPPEL — JUDICIAL ADMISSIONS — STIPULATIONS — ATTORNEY
AND CLIENT.

On the trial of an action for personal injuries, plaintiff's coun-
sel admitted in open court that a turntable, at which plaintiff
was employed turning an engine, could be revolved freely in
either direction. The appellate court on error held that if
he could have turned the table in the opposite direction the
danger complained of could not have caused his injury and
he should have selected the safer method. *Held,* that plain-
tiff was estopped on the second trial from taking the incon-
sistent position that the turntable could be revolved only in
the direction in which he and his fellow-servants were caus-
ing it to move.

2. SAME.

Judicial admissions stand upon a different footing from testi-
mony and are conclusive, even upon a new trial. MOORE
and BLAIR, JJ., dissenting.

Error to Lenawee; O'Mealey, J. Submitted June 23,
1911. (Docket No. 69.) Reargued October 13, 1911.
Decided December 29, 1911.

Case by Thomas G. Connor against the Lake Shore &
Michigan Southern Railway Company for personal in-
juries. A judgment for defendant on a verdict directed
by the court is reviewed by plaintiff on writ of error.
Affirmed.

*Smith, Baldwin & Alexander,* for appellant.

*Herbert R. Clark,* for appellee.

This case was before the court at the October, 1909,
term, and will be found reported in 158 Mich. 688 (123 N.
W. 533). The facts are there set out with sufficient clear-
ness. Upon a second trial, the plaintiff desired to be per-
mitted to withdraw the concession made at the first trial

(to which reference is made at page 694 of 158 Mich. [123 N. W. 533]), and offered to show that on the night in question the turntable with engine No. 50 upon it, not only could not be turned with equal facility in either direction, but that it was absolutely impossible to turn it except in the direction in which it was moving at the time plaintiff received his injury. Counsel for plaintiff further offered to testify that in making the concession which he did upon the former trial he acted under a misapprehension as to the scope of the inquiry made by defendant's counsel, and intended only to admit that as a general proposition the turntable would move with equal facility in either direction, but did not intend to admit that it would so move at the time plaintiff was injured. Counsel for defendant objected, and insisted that to allow plaintiff to give testimony in accordance with the offer would be to permit him to entirely change the theory upon which the case was originally tried, and found to be untenable, and to adopt a theory as to a controlling fact wholly at variance with, and antagonistic to, the one at first relied upon. Counsel for plaintiff urged that there was no change of theory—that the record upon the first trial contained evidence tending to show that upon the occasion in question the table could be turned only in one direction, and it was plaintiff's desire at this trial simply to amplify the evidence upon this point. The trial court, after an extended argument, granted the motion of defendant for a directed verdict, and plaintiff has removed the case to this court for review.

BROOKE, J. (*after stating the facts*). Since the argument of this case we have again carefully examined the record presented to the court upon the former hearing. We find that plaintiff testified that engine No. 50, which caused his injury, was one of the lighter type of engines in use by the defendant company at that time. He said:

"Engine 50 wouldn't project over the sides any. It was a small engine. * * * On a small engine like 50

I think there would be about a foot between the engine and the push bar."

As to what was done upon the occasion in question, he testified:

"When I got out there that night, * * * if I recollect right, the engine was stuck so that you could not move it, and we moved it back to the south a ways to get a kind of run on it. It was necessary most of the time to get speed on it, * * * and it was necessary to put speed on. We would move it as fast as we could, and that would help it over these bad places."

He further testified:

"When I first took hold of the lever, I think we started north with the engine. We turned them usually any way that we could—sometimes one way and sometimes the other. We would go sometimes as far as we could and stop, and then turn and go the other way as far as we could."

Frank Beyer, a witness for plaintiff on the former trial, testified, in part, as follows:

"*Q.* Well, now, you were standing then, or when you went out there, the engine was standing in sort of that condition (indicating)?

"*A.* Yes, sir.

"*Q.* Is that right?

"*A.* Yes, sir.

"*Q.* And was it stuck there?

"*A.* Yes, sir.

"*Q.* Well, what did you do first when you found the engine in that condition, stuck? Now you just tell the jury what you did.

"*A.* Why, I think Mr. Rogers and his helper, whoever it was, got a bar and got it off from that place where it stuck. Of course, they moved it back you see, and—

"*Q.* Well, now, what did they do? Did they get on this side of the—get down on the east side of the table and pinch it back south?

"*A.* Yes, sir; on the north side.

"*Q.* On the north side?

"*A.* Yes; and pushed it toward the south.

"*Q.* And got it off from this—

"*A.* Why, the place where it was stuck.

"*Q.* Well, then, after you got it off from that, what did you do?

"*A.* Well, then, we got a new hold on it, and tried it again.

"*Q.* And that is the time Mr. Connor got hurt?

"*A.* Yes, sir."

The engine was traveling in a northerly direction when plaintiff was hurt. We think the foregoing testimony clearly indicates that, while attempting to turn the engine to the north, it had become "stuck," that thereupon it was turned a little way to the south "to get speed on it," and then pushed as rapidly as possible towards the north. We have been unable to discover a single word of testimony in the former record from which an inference could be drawn that the engine stuck while being moved to the south, and therefore could not be further turned in that direction. We have not adverted to the testimony introduced on behalf of the defendant upon this point. We think that the testimony above quoted, together with the concession made by plaintiff's counsel, clearly establishes the fact that upon the occasion in question the table would turn with equal facility in either direction. In our former opinion we held (and, after a reperusal of the record, we still think properly) that fact to be controlling of the issue.

The question, then, is presented, whether plaintiff should now be permitted to introduce testimony tending to establish the exact converse of that fact. We are constrained to hold that he may not do so. In *Hamilton* v. *Frothingham*, 71 Mich. 616 (40 N. W. 15), this court said:

"Even if this were not so, the plaintiff cannot be permitted to take a position now wholly inconsistent with that taken on the former trials. The contract now claimed under is wholly inconsistent with that claimed upon the former trials. If this contract was made, then the one upon which the former recovery was had did not exist, and no recovery could have been had thereunder. If the contract was to pay all over $8,000, then an express contract to pay a certain and specific sum did not exist.

"If such inconsistent positions were allowed to be taken in courts of justice, there would be no end to litigation. Parties finding that contracts upon which they have relied for recovery cannot be upheld in the courts are not permitted under the same pleadings and bills of particulars to retry their case upon an entirely different contract, and one entirely contradictory to the one first claimed under, even for the purpose of meeting the opinion of this court and squaring their case with it."

Again in *Humphrey* v. *Transportation Co.*, 115 Mich. 420 (73 N. W. 422), it is said:

"It is well settled that a plaintiff cannot maintain inconsistent positions; that is, he cannot commence and prosecute a suit upon one theory, and then abandon that theory and adopt another entirely inconsistent with the first, when the assertion of the latter would positively negative the former."

In *Marquette, etc., R. Co.* v. *Marcott*, 41 Mich. 433 (2 N. W. 795), Mr. Justice GRAVES, speaking for the court, said:

"The court must consider that the concession was in fact made as represented in the bill of exceptions, and as a consequence must hold that the plaintiff in error is not entitled to take any ground inconsistent with it.

"After submitting to the jury to have the case go one way or the other as they should find on consideration of the evidence that the company was or was not negligent in the particular respects charged, it is not competent to assume a discrepant position or claim to have been injured by rulings only bearing on points which the concession put out of controversy."

See, also, *Wetmore* v. *McDougall*, 32 Mich. 276; *Henry* v. *Quackenbush*, 48 Mich. 415 (12 N. W. 634); *Bassett* v. *Shepardson*, 57 Mich. 428 (24 N. W. 182).

The case of *Pelton* v. *Schmidt*, 104 Mich. 345 (62 N. W. 552, 53 Am. St. Rep. 462), relied upon by plaintiff, has been examined with care. In that case the plaintiff upon the first trial testified that he had never been in the store from that way before the occasion of his injury. Upon the second trial he testified that it was his custom to

go through to the clerk to get receipts, entering at the back door. Commenting upon this change in plaintiff's testimony, Mr. Justice HOOKER says:

"Defendants' counsel contend that the plaintiff is concluded by his former testimony, and that he should not be allowed to recover by reason of evidence flatly contradictory of his former testimony. Decisions of this court in cases brought here by writ of error are conclusive upon the parties, as far as the law is concerned, whenever the same state of facts is presented; but upon different facts other principles may apply. If parties change their testimony, the jury may properly consider the fact, but it is not for this court to say that a party must stand or fall by his former testimony, where there is any legitimate opportunity for a change in the testimony. It may, perhaps, be said that there was no such opportunity here; but, by ordering a new trial, this court relegated the subject to the jury."

It may be said that this case is not in harmony with earlier decisions of this court. It is not necessary so to determine here. Admissions stand upon a different footing from that held by mere testimony. The jury hears the testimony, weighs it, and believes it or not, as the case may be, but a judicial admission made intelligently and with deliberation establishes the fact with reference to which it is made, and the jury must accept it as so established. 1 Greenleaf on Evidence, § 186, states the rule as follows:

"The admissions of attorneys of record bind their clients, in all matters relating to the progress and trial of the cause. But, to this end, they must be distinct and formal, or such as are termed solemn admissions, made for the express purpose of alleviating the stringency of some rule of practice, or of dispensing with the formal proof of some fact at the trial. In such cases, they are in general conclusive, and may be given in evidence, even upon a new trial"—citing cases.

See, also, 2 Chamberlayne on Evidence, § 1232 *et seq.;* 4 Wigmore on Evidence, § 2588 *et seq.*, and cases cited.

In the case at bar the defendant was offering evidence

to the effect that the table would turn as well one way as the other when the admission was made, thus doing away with the necessity for such evidence. It is possible that evidence available at the former trial upon this point might not be available at a subsequent hearing. In such case defendant, in accepting the admission in place of putting in the testimony, would be placed at a distinct disadvantage, if, upon a second trial, plaintiff were permitted to withdraw his admission and offer evidence at variance therewith.

We are of opinion that the learned circuit judge made a proper disposition of the case.

The judgment is affirmed.

OSTRANDER, C. J., and STEERE, McALVAY, and STONE, JJ., concurred with BROOKE, J.

MOORE, J. (*dissenting*). I cannot agree with the conclusion reached by Mr. Justice BROOKE. It should not be forgotten that the result reached by this court is to be visited, not upon the lawyers employed in this case, but upon the parties to the litigation.

The record discloses that one of the counsel for plaintiff did not participate in the former trial until it had been in progress for a day or two. At about the time he began to participate in the trial, the question was put to a witness which led to what is now claimed to be an admission of so solemn a character as to preclude the plaintiff from showing the actual fact in relation to a material matter. Counsel both say they understood the question and the admission very differently from the interpretation given it by counsel for the defendant, and by the court upon the second trial.

We quote from the record:

"*Mr. Baldwin:* I want to say here that, at the time of the claimed admissions that were made in reference to how this table was turned, I had no apprehension that those questions and those inquiries were directed at the engine in question and at the time in question, because

Mr. Clark's question didn't point to this engine, or didn't point to the time in question when Mr. Connor was hurt, but his question was whether they sometimes turned engines one way and another upon that table, and it misled me to believe that his inquiry was directed to the movement of that table generally. Now, that was the situation.

"*Mr. Smith:* And that we want to show, too.

"*The Court:* What other engine was under investigation on that turntable, except this one, at the time?

"*Mr. Baldwin:* There was none, and, if he had simply said to me, or asked that question, directed his question to that engine, there wouldn't have been any difficulty in this lawsuit, but he didn't do it. He asked the question if they couldn't turn engines generally both ways on that table, as the question itself shows from the record, and it misled me because I didn't think that he meant the engine in question. If he had meant that he would have said: 'Is it true that engine No. 50 could be moved either way upon this table?' But instead of doing that, and instead of applying to the case that was then being tried, he said: 'Have you moved engines both ways upon this table?' And that is what misled me, because that was true that they did move engines, some engines would move both ways, and some engines wouldn't."

Counsel are reputable practitioners of high character, and we have no doubt mean to state truly their understanding of the question and of the admission. If they do, then we think it cannot be said that they were so "distinct and formal of such as are termed solemn admissions made for the express purpose of alleviating the stringency of some rule of practice," etc., within the meaning of the authorities cited by Justice BROOKE. We think what was said and done in the course of the other trial ought not to preclude the plaintiff from showing, if he can, the actual situation at the time his cause of action, if any, arose. I cannot distinguish the case in principle from *Pelton* v. *Schmidt*, 104 Mich. 345 (62 N. W. 552, 53 Am. St. Rep. 462), where Justice HOOKER, speaking for the court, said:

"Defendants' counsel contend that the plaintiff is concluded by his former testimony, and that he should not be

allowed to recover by reason of evidence flatly contradictory of his former testimony. Decisions of this court in cases brought here by writ of error are conclusive upon the parties, so far as the law is concerned, whenever the same state of facts is presented; but upon different facts other principles may apply. If parties change their testimony, the jury may properly consider the fact; but it is not for this court to say that a party must stand or fall by his former testimony, where there is any legitimate opportunity for a change in the testimony. It may, perhaps, be said that there was no such opportunity here, but by ordering a new trial this court relegated the subject to the jury."

If I am right about this, it follows that the case should be reversed, and a new trial ordered.

BLAIR, J. If the previous decisions of this court are opposed to the result reached by Justice MOORE, I think they should not be followed, and I therefore concur in his opinion.

BIRD, J., did not sit.