PEOPLE *v.* CLARK.

OPINION OF THE COURT. .

1. CRIMINAL LAW—TRIAL—EVIDENCE—ADMISSION OF COUNSEL.
  Statement by defense counsel that defendant would testify later to making a certain telephone call relieved the prosecutor of the burden of proving that fact, and it was not error to deny a motion for directed verdict at the close of the prosecution's case, even though without admission by defendant's attorney the prosecution's case would be insufficient.

2. SAME—ABANDONMENT OF CHILD—EVIDENCE.
  Evidence presented in prosecution of mother for abandonment of her child including admission by defense counsel, *held,*

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 20 Am Jur, Evidence § 592.
[3] 21 Am Jur 2d, Criminal Law § 82.
[4, 6, 7] 23 Am Jur 2d, Desertion and Nonsupport § 58. ·
[5] 5 Am Jur 2d, Appeal and Error §§ 786, 883.

sufficient to justify denial of motion for a directed verdict of not guilty at close of prosecution's case (CLS 1961, § 750.136).

3. SAME—INTENT—EVIDENCE.

Intent is a secret of a man's mind, which he can disclose by declarations or actions, and sometimes actions speak louder than words.

4. SAME—CHILD—ABANDONMENT—INTENT.

Finding of trial court, without jury, that defendant, charged with child abandonment, had intended to abandon her child, when evidence showed that she left child on third floor of hotel, went to lobby of hotel, called police and told them where she had left the child and her name and address, and called hotel switchboard anonymously and told operator where child was, *held*, supported by sufficient evidence, as against defendant's contention that she did not intend to abandon child, but wanted to have him treated at a hospital, was without funds, and knew of no other way to get treatment (CLS 1961, § 750.136).

5. SAME—APPEAL AND ERROR—SUFFICIENCY OF EVIDENCE.

Appellate court will not set aside a finding of guilt by a trial judge sitting without a jury when there is evidence to support a finding of guilty beyond a reasonable doubt.

DISSENTING OPINION.
HOLBROOK, J.

6. CRIMINAL LAW—CHILD ABANDONMENT—INTENT—EVIDENCE.

*Evidence was insufficient to find intent to abandon child beyond reasonable doubt when defendant charged with abandoning child testified that her purpose in leaving child in hallway of hotel and calling police to come to get him was to have the child treated in a hospital, that she had no money and knew of no other way to get medical attention for the child, that she watched the hotel lobby until the police took the child away, and that she visited the child every day while he was in the hospital (CLS 1961, § 750.136).*

7. SAME—CHILD ABANDONMENT—EVIDENCE.

*Abandonment of a child, as used in statute penalizing such an act, must be shown to be an intention wholly to abandon the child, and entirely sever, so far as possible, the parental relation and to throw off all obligations growing out of the relation (CLS 1961, § 750.136).*

Appeal from Recorder's Court of Detroit; Groat (Gerald W.), J. Submitted Division 1 October 4, 1966, at Detroit. (Docket No. 1,248.) Decided April 25, 1967. Application for leave to appeal dismissed by stipulation by Supreme Court June 16, 1967.

Lois Marie Clark was convicted of abandoning her child. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*Dominick R. Carnovale,* for defendant.

J. H. GILLIS, J. Defendant, Lois Marie Clark, was charged with abandoning her child in violation of CLS 1961, § 750.136 (Stat Ann 1962 Rev § 28.331). Defendant waived her right to a trial by jury and the trial commenced on May 18, 1965.

The theory of the people's case is that the defendant, on October 27, 1964, at approximately 10 p.m., took her 5-week-old baby to the second floor of a hotel located in the city of Detroit, that she left the baby on the second floor, went downstairs to the lobby and made an anonymous phone call to the hotel switchboard where she informed the operator that she had left her baby on the second floor.

The hotel switchboard operator, who testified as a witness for the people, was cross-examined by defense counsel as follows:

"*Q.* And the lady's voice talked to you about a baby on the third* floor?
"*A.* Yes.

---

\* While defendant testified that she left the child on the second floor, other witnesses testified that the child was left on the third floor.

"*Q.* What did she say?

"*Mr. Picone* [*prosecutor*].    Now, I'm going to object to it   *   *   *   as hearsay.

"*The Court.* Well, of course, it's hearsay.   *   *   *

"*Mr. Freed* [defense counsel].    It is hearsay, Your Honor.   *   *   *   But I will say this, Your Honor, that in my case I'm going to bring my client up and testify that she made that telephone call.

"*Mr. Picone.* All right.

"*The Court.* All right then."

At the conclusion of the people's case, defense counsel moved for a directed verdict of not guilty. He argued that the statute required, and the information charged, that the defendant *willfully* abandoned her child, but that the necessary elements of willfulness and of intent to leave the child permanently had not been proved.    The court in ruling on the motion stated:

"*The Court.* All right.    Now, what is abandonment?    To leave something someplace.    That's it, isn't it?   *   *   *

"*Mr. Freed.* It's that—

"*The Court.* Wait a minute.   *   *   *

"*The Court.* And this woman admitted it over the phone.

"*Mr. Freed.* Now, that isn't the complete—

"*The Court.* No, but I say that is what she said.

"*Mr. Picone.* You see, if we didn't have that we wouldn't have a case.

"*The Court.* All right.    I'm going to hold against you."

Defendant took the stand in her own defense and testified that on the date in question, at approximately 10 p.m., she took her 5-week-old baby to the hotel and that she left the baby on the second floor, went downstairs to the lobby and made an anonymous phone call to the hotel switchboard informing the operator of the location of the child, and that she

then phoned the police and informed them "who that baby was, who I was and where I lived." Defendant further testified that she left the baby because he was very ill and she could not afford to pay any medical expenses and "I knew from my experience then that the hospital will take a police lodger infant."

On appeal, defendant argues that the trial court erred in denying defendant's motion for a directed verdict. Appellant contends that at this point the court had to rely on the statement of the defendant's trial counsel to the effect that his client had made the telephone call in question and that in the absence of such statement by counsel there is insufficient proof that defendant violated the abandonment statute.

This Court cannot agree with this contention. The admission of defense counsel that the defendant made the anonymous phone call to the switchboard operator relieves the prosecutor from proving that fact. See *People* v. *Sybisloo* (1921), 216 Mich 1. The trial court did not err in denying defense counsel's motion for a directed verdict of not guilty. *Cf. Connor* v. *Lake Shore & M. S. R. Co.* (1911), 168 Mich 29, 34.

Defendant also contends that the evidence was insufficient to establish the necessary element of intent to abandon. In support of this contention, defendant cites the case of *People* v. *Quigley* (1921), 217 Mich 213. However, the Court in that case stated at page 217, 218:

"There is no presumption or permissible inference that what they did do they did not intend to do; the presumption is the other way, and upon the trial, from what they did do, the jury could find the intent.

"An intent, of course, is a secret of a man's mind, and he can disclose it by declaration or by his actions. And actions sometimes speak louder than words."

In *People* v. *Szymanski* (1948), 321 Mich 248, 254, the Supreme Court of Michigan held that:

"The trial judge saw and heard the witnesses and he was in a far better position than is this Court to determine their credibility. There was evidence to support the finding that defendant was guilty beyond a reasonable doubt. Such being the case, this Court may not set aside the verdict on the ground that the evidence was not sufficient to sustain it. *People* v. *Eger* (1941), 299 Mich 49; *People* v. *Chesbro* (1942), 300 Mich 720."

After a thorough review of the record on appeal, we cannot say that the evidence in the present case does not not sustain beyond a reasonable doubt the trial court's finding that defendant had an "intent to abandon" her child.

Affirmed.

LESINSKI, C. J., concurred with J. H. GILLIS, J.

HOLBROOK, J. (*dissenting*). The facts of this case are analogous to the Biblical account of Moses' parents circumventing an Egyptian infanticide law by placing him in an ark of bulrushes along a river's bank. There, as here, plans and preparation were directed to the *well being of an infant* in the face of seemingly adverse circumstances.[1] The defendant, not unlike Moses' sister "stood afar off, to wit what would be done to him." Exodus, 2:4. As an omniscient and omnipresent observer she regulated to a great degree the events leading to the proper care of her child that was ill. This, from her testimony, was her only intent, which was not disputed. The need

---

[1] Defendant was separated from her husband who had refused to pay for the necessary care and medical attention of the infant. She was completely without funds to obtain such services and, without funds, she knew of no way to have her baby receive immediate hospitalization or medical attention except through the action she pursued.

for immediate medical attention for her infant prompted the action. Her act may be criticized but should not be condemned and punished.

I am persuaded that the evidence herein was insufficient to establish the necessary element of *intent to abandon* beyond a reasonable doubt.[2] Defendant did not design or intend to commit a wrongful act— i.e., the abandonment of her child; and the employment of a dubious course of action to obtain the necessary medical attention should not be interpreted as wilful and intentional abandonment.[3] The child was taken to receiving hospital and given the necessary medical attention for several days. While the child was in the hospital, the mother called the hospital and visited the child daily.

For these reasons I am constrained to voice dissent and find that the trial court should be reversed.

---

[2] "In order to constitute the offense of abandonment, under statutes of the character under consideration, there must be an intention wholly to abandon the child and entirely sever, so far as possible, the parental relation and to throw off all obligations growing out of the same." (Footnote omitted.)  46 CJ, Parent and Child, § 206, p 1349.

[3] CLS 1961, § 750.136 (Stat Ann 1962 Rev § 28.331).