## The Peoples' Bank of the City of Baltimore *vs.* Jacob Morgolofski.

*Elevators—Degree of Care required in their Management—*
*Action for Injuries caused by Falling down an Elevator*
*shaft—Negligence—Contributory negligence—Province of*
*Court and Jury—Evidence—Measure of Damages—Bill of*
*Exception—Practice in Appellate Court.*

The defendant owned a building which was occupied by a number of tenants for business purposes. There was an elevator in the building which was used both for passengers and freight, and was in charge of and operated by the defendant's agent. The plaintiff was employed by one of the tenants, and was seriously injured by falling down the elevator shaft, the door of the shaft being open at the time, and the bar pulled back; and the plaintiff having stepped into the shaft supposing the elevator was there, it being too dark for him to see that it was not. In a suit brought by him against the defendant for the injuries thus sustained, evidence was offered by both parties bearing upon the question of negligence on the part of the defendant and contributory negligence on the part of the plaintiff. HELD:

1st. That there was testimony before the jury tending to prove, if they believed it, that the defendant did not use that reasonable caution and vigilance which is required in the management of an elevator like the one described by the witnesses, which was used both for passengers and freight.

2nd. That the elevator was in charge of and operated by the defendant's agent, and it was bound at all times to use reasonable caution and care to make the elevator safe for all persons who had a right to use it, or did in fact use it with the defendant's knowledge and consent.

3rd. That when elevators remain under the control of the owner of the building he is liable to his tenants for any defect in them, their appointments, or their management, which reasonable care and vigilance would have prevented.

4th. That the exercise of the most ordinary care by the defendant in this case would have resulted in keeping the elevator door closed, and in preventing the injury to the plaintiff.

Peoples' Bank *vs.* Morgolofski.

5th. That ordinarily, the question of negligence is one for the jury, but sometimes it becomes the duty of the Court to instruct them that, in spite of the negligence of the defendant the plaintiff cannot recover.

6th. That the Court, however, will never assume this responsibility unless the case is a very clear one, and presents some prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ.

The Act relied on to show contributory negligence on the part of the plaintiff was that he walked into the elevator shaft without looking to see if the elevator was there. He testified that he could not see at all; but that he was sure, with the door open and the bar back, the elevator was in its place, and that it was so dark he could not see whether it was there or not. There was evidence to show that the hall was dark in front of the elevator, and that the distance from the door of the elevator to the door from which the plaintiff came was only one or two steps. HELD:

1st. That the Court properly left it to the jury to find whether, under all the circumstances of the case, the plaintiff had a right to assume that the elevator was at the fourth floor where he stepped into the shaft.

2nd. That it was a question of considerable doubt, whether the conduct of the plaintiff constituted such contributory negligence as should prevent him from recovering; and, where such doubt exists, the question of contributory negligence is one of fact, to be determined by the jury.

3rd. That it was the duty of the defendant to operate the elevator in question with reasonable care and vigilance; and the plaintiff had a right to assume that this duty would be faithfully performed.

4th. That so assuming he would not be required to exercise that degree of caution which could properly and fairly be demanded of him under other circumstances.

5th. That the jury were properly instructed that if they found for the plaintiff, in estimating the damages they were at liberty to consider the health and condition of the plaintiff before the injuries complained of as compared with his then condition in consequence of such injuries, and whether the said injuries were in their nature permanent, and how far they were calculated to

disable the plaintiff from engaging in those pursuits and employ-
ments, for which, in the absence of said injuries, he would have
been qualified, and also the physical and mental suffering to
which he was subjected by reason of said injuries, and to allow
such damages as in the opinion of the jury would be a fair and
just compensation for the injuries which they might find the
plaintiff had sustained.

Where a special exception to a prayer for want of evidence, is not
contained in the bills of exception signed and sealed by the
trial judge, it cannot be considered in the Court of Appeals.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the two
following prayers:

1. The plaintiff prays the Court to instruct the jury
that if they find that the defendant is the owner of the
building at the corner of Sharp and Lombard streets,
described in the evidence; that it has constructed an
elevator in the said building, which for a period of about
six years, with the knowledge of the defendant, has been
used by the tenants of said building, their customers,
and employés, for passenger service; that the plaintiff,
at the time of the injury complained of, was an employé
of Elias Rohr, who was a tenant in said building; that
upon each floor of said building at the entrance of said
elevator, there is placed a sliding door with a bar across
the same; that the said sliding door and bar are placed
at the entrance of said elevator for the purpose of being
opened as the elevator reaches the respective floors of
s aid building to take in passengers, and to be closed as
the elevator leaves the same to prevent accident, and
that the plaintiff on the 24th day of March, 1890, left
t he workshop of the said Rohr, and approached the en-
trance to said elevator, and the cross bar had been
th rown back at the said entrance and the sliding door

Peoples' Bank *vs.* Morgolofski.

thrown open, and the plaintiff was in the act of descending upon the said elevator when he was precipitated to the basement below; and if they further find that the approach to the elevator was not sufficiently lighted to enable any one exercising ordinary prudence to detect the absence of the elevator, that the servant who was in charge of the elevator had left the custody thereof, and that the plaintiff was exercising reasonable and ordinary caution at the time of the accident, and the said injury was occasioned by the want of ordinary care and prudence on the part of the defendant, then the plaintiff is entitled to a verdict.

2. If the jury find for the plaintiff, in estimating the damages, they are at liberty to consider the health and condition of the plaintiff before the injuries complained of, as compared with his present condition in consequence of such injuries, and whether the said injuries are in their nature permanent, and how far they are calculated to disable the plaintiff from engaging in those pursuits and employments, for which in the absence of said injuries he would have been qualified, and also the physical and mental suffering to which he was subjected by reason of said injuries, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injuries which they may find the plaintiff has sustained.

And the defendant offered the seven following prayers:

1. That there is no sufficient proof in law, of negligence or want of ordinary care in this case on the part of the defendant, to entitle the plaintiff to recover.

2. That there is no evidence in this case legally sufficient to show that the injury to the plaintiff was not received in consequence of his own contributing negligence, and that he therefore is not entitled to recover.

3. That the plaintiff is not entitled to recover in this case, because the injury was received by reason of his own negligence, directly contributing to said injury.

4. That if the jury believe that the accident complained of, whereby the plaintiff was injured, would have been avoided by the exercise of ordinary care and caution on his part, he is not entitled to recover in this action, and their verdict must be for the defendant, even though the jury shall believe the defendant was equally guilty of negligence.

5. That if the jury shall find from the evidence that the accident in question would have been avoided by the exercise of ordinary care and caution on the part of the plaintiff, he is not entitled to recover.

6. That the burden of proof is upon the plaintiff to show that the defendant was negligent, and that the accident complained of was the result of such negligence, and also that the plaintiff did not contribute to the accident by any want of due care and caution on his part.

7. If the jury shall believe that the elevator mentioned in the evidence was a freight elevator, and 'was to be used for freight only, then their verdict should be for the defendant, and there is no evidence legally sufficient to show that the defendant ever authorized the use of said elevator, in any way, except for the purpose of carrying freight.

The Court, (STEWART, J.,) granted the plaintiff's prayers, and the fourth, fifth and sixth prayers of the defendant, and refused the defendant's other prayers. The defendant excepted, and the verdict and judgment being against it this appeal was taken.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Robert Ludlow Preston,* and *J. Alexander Preston,* for the appellant.

The onus of proving negligence on the part of the defendant or its agent is on the plaintiff, and juries can-

not be allowed to make mere conjecture or speculation the foundation of their verdicts. *Balto. & Ohio R. R. Co. vs. State, use of Savington,* 71 *Md.,* 599; *Annapolis and Baltimore Short Line R. R. Co. vs. Pumphrey,* 72 *Md.,* 82; *State, use of Barnard, et al. vs. Phil., Wilm. & Balto. R. R. Co.,* 60 *Md.,* 558; *State, use of Foy, et al. vs. Phil., Wilm. & Balto. R. R. Co.,* 47 *Md.,* 87.

If the injury complained of was not caused entirely by the negligence of the defendant, but the plaintiff contributed to it, as he most assuredly did by not looking where he stepped, he cannot recover. *Lewis vs. B. & O. Railroad Co.,* 38 *Md.,* 588; *Dietrich vs. Baltimore & Hall's Springs Railway Co.,* 58 *Md.,* 347; *Pittsburg & Connellsville Railroad Co. vs. Andrews,* 39 *Md.,* 332.

The violation of the rules for the use of the elevator precludes recovery in this case. *Balto. & Ohio Railroad Co. vs. Wilkinson,* 30 *Md.,* 225; *Northern Central Railway Co. vs. State, use of Geis,* 31 *Md.,* 357; *State, use of Hamelin, et al. vs. Malster & Reaney,* 57 *Md.,* 312.

In the State of Massachusetts, the precise state of facts existed as in this case, and the Supreme Court of that State held there could be no recovery. *Taylor vs. Carew Mfg. Co.,* 143 *Mass.,* 470.

*Bernard Weisenfeld,* and *John Prentiss Poe, Attorney-General,* (with whom was *Isidor Rayner,* on the brief,) for the appellee.

The following authorities were referred to: *Tousey vs. Roberts,* 114 *N. Y.,* 312; *Dawson vs. Sloane,* 49 *N. Y., (Sup.,)* 304, affirmed in 100 *N. Y.,* 620; *Engel vs. Smith,* 82 *Mich.,* 1; *Fisher vs. Cook,* 23 *Ill. App.,* 621; *Clopp vs. Mear,* 134 *Penn. St.,* 203; *James vs. Ford,* 9 *N. Y., (Sup.,)* 504; *Glushing vs. Sharp,* 96 *N. Y.,* 676; *Morrissey vs. Wiggins Ferry Co.,* 47 *Mo.,* 521; *Penn. R. Co. vs. Ogier,* 35 *Penn. (St.,)* 60; *Ernst vs. Hudson R. R. Co.,* 35 *N. Y.,* 9 *and* 28; *Balto. & Ohio Railroad Co. vs. State,*

Peoples' Bank *vs.* Morgolofski.

*use of Hauer,* 60 *Md.*, 449; *Phil., Wilm. & Balto. Railroad Co. vs. Anderson,* 72 *Md.*, 519; *Western Md. R. Co. vs. Herold,* 74 *Md.*, 510; *Treadwell vs. Whittier,* 80 *Cal.*, 574; *Beach on Contributory Negligence, sec.* 23; *Shearman & Redfield on Negligence,* (*4th Ed.*,) *secs.* 91, 466, 511, *and* 719; *Baltimore & Ohio Railroad Co. vs. Owings,* 65 *Md.*, 502; *McMahon vs. Northern Central Railway Co.*, 39 *Md.*, 449; *Cumberland Valley Railroad Co. vs. Maugans,* 61 *Md.*, 61; *Baltimore and Ohio Railroad Co. vs. Kane,* 69 *Md.*, 11–20.

FOWLER, J., delivered the opinion of the Court.

The appellant, who was defendant below, owns a building in the City of Baltimore, which is occupied by a number of tenants for business purposes.. There is an elevator in this building which was used both for passengers and freight.

The plaintiff, now appellee, was employed by one of these tenants, and was seriously injured by falling from the fourth floor to the cellar through the elevator shaft.

For the injuries thus sustained the plaintiff sued the defendant in the Superior Court of Baltimore City, and recovered judgment. From this judgment the defendant has appealed.

The two questions, as usual in cases of this kind, are—first, was the defendant guilty of negligence? And, second, was the plaintiff guilty of contributory negligence?

At the close of the testimony, both parties having produced witnesses to sustain their respective contentions, the plaintiff offered two prayers, which were granted, and the defendant seven, four of which were rejected and three granted. Inasmuch as defendant's first prayer is a demurrer to the evidence, it will be necessary to examine the testimony at length.

At the time of the accident the plaintiff was working for a tenant of the defendant. He was proceeding up

the stairway to the place of business of his employer on
the fourth floor, when he heard the elevator going up
the shaft. When he arrived at the fourth floor, he heard
the elevator thrown open on that floor.   Having accom-
plished the object of his visit, he returned to take the
elevator, which was just outside the door of his em-
ployer's office.   His testimony was that he could not see
at all in the hall, and, having heard the elevator go up,
the door of the elevator being open, and the bar back,
he was sure the elevator was in its place.   He stepped
in to take the elevator, and fell down five floors, into the
basement, and was seriously and permanently injured,
as set forth in the testimony.

This elevator was used every day for the people em-
ployed by the various tenants, and the boy in charge of
it who was employed by the defendant, daily brought
down the working people from the upper stories of the
building.   There was a painted window on one side of
the elevator, and it was very dark there ; there was no
gas light there, and the distance from the door out of
which the plaintiff came on his way to take the elevator
is only about two feet from the elevator door.   On re-
examination, the plaintiff said he heard the elevator door
thrown open ; that he was sure the elevator was there,
and that it was so dark that he could not see whether it
was there or not.   The elevator boy was not in charge
at the time of the accident, nor was he aware of it until
informed by one of the witnesses.

Several of the plaintiff's witnesses testified that this
boy did not attend to his duties properly, and that he
was frequently called when he was not at his post.   The
attention of the defendant, through its cashier, was
called to these facts, and also to the fact that the shaft
was frequently left open.   The place around the eleva-
tor door was dark when coming out of a light room.

On the part of the defendant it was shown that on the
day of the accident the elevator boy left the building be-

fore twelve o'clock, and went to his dinner. The boy testified that on that day he cut off the water, and put the elevator in the celler. On his return, he found the plaintiff lying in the cellar, and the elevator at the sixth floor of the building. He did not know how the elevator got there, but said that "the people" would run the elevator when he was at dinner, and that one of the workmen told him that some of the people, "whoever it was," did not keep the gates fastened. One of the witnesses testified that this boy was a worthless and careless fellow, "and that he was a most disgraceful liar."

The defendant also offered testimony tending to show that the elevator in question was an ordinary freight elevator, and that it was not safe for passengers, and the cashier of the defendant denied that he had been warned of the danger. He believed that Ross, who was in charge of the elevator, was a correct boy, and he had given him repeated instructions that the elevator should be used only for freight. The people in the building had often run the elevator themselves. He admitted, however, that he knew the elevator had been used as a passenger elevator to carry the people employed in the building, but he said he was under the impression that the defendant had no control over it. Although he was aware the elevator was so used for six years, he never gave notice of any kind that it was for freight alone.

Upon these and other facts, not necessary further to refer to, it was submitted to the jury by the instructions of the Court to find whether the defendant was guilty of negligence, and, if so, whether the plaintiff was guilty of such contributory negligence as would prevent him from recovering notwithstanding the negligence of the defendant.

In the first place, it is very clear from the foregoing recital of the facts given in evidence that there was testi-

mony before the jury tending to prove, if the jury believed it, that the defendant did not use that reasonable caution and vigilance which is required in the management of an elevator, which like the one described by the witnesses was used both for passengers and freight. The elevator was in charge of and operated by the defendant's agent, and it was bound at all times to use reasonable caution and care to make the elevator safe for all persons who had a right to use it, or who did in fact use it with defendant's knowledge and consent. *Engel vs. Smith,* 82 *Mich.,* 1.

This reasonable rule is also laid down in *Shearman & Redfield on Negligence, section* 719, where it is said that, although elevator shafts and openings are now very generally used in warehouses and other places of business, they are dangerous, especially if *located in dark places,* or in such close proximity to doors that a person entering the door may step into them unawares. And it is also said that "when elevators remain under the control of the owner of the building he is liable to his tenants for any defect in them, their appointments or *their management* which reasonable care and vigilance would have prevented."

It must be admitted that the exercise of the most ordinary care by the defendant in this case would have resulted in keeping the elevator door closed, and in preventing the injury to the plaintiff.

But in regard to the other question, whether the plaintiff was guilty of contributory negligence there is more difficulty and doubt.

Ordinarily, of course, the question of negligence is one for the jury, but sometimes it becomes the duty of the Court to instruct them that in spite of the negligence of the defendant the plaintiff cannot recover. The Court, however, will never assume this responsibility unless the case is a very clear one, and presents as was

said in the case of *Cumberland Valley Railroad Co. vs. Maugans,* 61 *Md.,* 53, and others decided by this Court, "some prominent and decisive act in regard to the effect and character of which no room is left for ordinary minds to differ." The act relied on here to show contributory negligence on the part of the plaintiff is the one established by his own testimony—namely, that he walked into the elevator shaft without looking to see if the elevator was there. He testified that he could not see at all, but that he was sure with the door open and the bar back, the elevator was in its place; and that it was so dark he could not see whether it was there or not. He does not say, he was not asked to say, whether he could see whether the elevator door was open, and the bar pulled back. The fair inference from his testimony is that he could see that the elevator door was open, but could not see whether the elevator was or was not in its place. He says: "The door being open, and the bar back," he was sure the elevator was there.

It must be remembered that the hall was dark in front of the elevator, and that the distance from the door of the elevator to the door from which the plaintiff came was only one or two steps, or, as the witnesses say, from eighteen inches to two feet. He had, therefore, but a moment either to look or to think.

In the case of *Tousey vs. Roberts,* 114 *N. Y.,* 316, it is said that "an elevator for the carriage of persons is not like a railroad crossing at a highway, supposed to be a place of danger, to be approached with great caution; but on the contrary it may be assumed, when the door is opened by an attendant to be a place which may be safely entered, without stopping to look, listen, or make a special examination."

And in *Dawson vs. Sloane,* 49 *N. Y., (Superior),* 304, affirmed in 100 *N. Y.,* 620, it was held that where a tenant in an apartment house saw the owner's elevator

boy sitting in a nodding position, and plaintiff, suppos-
ing the platform to be in its place, but failing to inquire
or stop to examine and see, stepped in and fell to the
bottom of the shaft, it was held to be for the jury to
decide if the appearances were not such as to throw the
plaintiff off his guard; and a verdict for the plaintiff
was sustained.  In the course of its opinion in the case
just cited, the Court of Appeals of New York say: "The
injury occurred from the plaintiff stepping into and fall-
ing down the well of an elevator, when the elevator car-
riage was at an upper floor. * * * The elevator faced
the street door.   The plaintiff walked from the street
door towards the elevator.  He saw that the elevator
door was open, as he had often seen it before, and that
the boy who ran the elevator was sitting by the elevator.
There was no gas burning at the place.   It was so dark
that the plaintiff could not see the boy's face, although
he saw him in a nodding position.   The plaintiff sup-
posing the platform to be there, stepped inside and fell
to the bottom.   It is claimed that under these circum-
stances it was apparent that there was danger, and that
the plaintiff should have taken precautions, such as
feeling whether the carriage was there, or waking the
boy to ask him as to that fact, or getting in some other
way information upon which he could safely proceed.
This position is not valid."   It is for the jury, says the
Court, to determine whether and to what extent the
plaintiff might rely on the appearances presented.

   And so we are of opinion that the Court below prop-
erly left it to the jury to find whether, under all the cir-
cumstances of this case, the plaintiff had a right to
assume that the elevator was at the fourth floor where
he stepped into the shaft.

   We do not mean to say it is a clear question, but, on
the contrary, as we have already said, it is one of con-
siderable doubt whether the conduct of the plaintiff

constitutes such contributory negligence as should prevent him from recovering. And where such doubt exists, the question of contributory negligence is one of fact, to be determined, as it was in this case, by the jury. *Maugans' Case, supra.*

It was undoubtedly the duty of the defendant to operate the elevator in question with reasonable care and vigilance. *Engel vs. Smith,* and *Shearman & Redfield on Negligence, ante;* and the plaintiff had a right to assume that this duty would be faithfully performed.

So assuming, he would not be required to exercise that degree of caution which could properly and fairly be demanded of him under other circumstances. It is a sound rule of law, says *Mr. Beach in his work on Contributory Negligence, p.* 41, that it is not contributory negligence not to look for danger when there is no reason to apprehend any. This principle is forcibly illustrated and applied in the recent cases of the *Baltimore & Ohio Railroad Company vs. State, use of Hauer,* 60 *Md.,* 463, and *Phil., Wilm. & Balto. R. R. Co. vs. Anderson,* 72 *Md.,* 523.

The first prayer granted on the part of the plaintiff fully and fairly submitted to the jury the question of negligence and contributory negligence, and the second properly instructed them on the measure of damages.

The defendant's first prayer asked the Court to say that there was no legally sufficient evidence of negligence, and the second and third that the plaintiff was guilty of contributory negligence and was not entitled to recover.

In view of the authorities above cited, and for the reasons we have already given, we are of opinion that these prayers of the defendant were properly refused and those of the plaintiff were properly granted.

Defendant's seventh prayer was properly refused, because, as we have seen, there was evidence before the

jury tending to show that the defendant did authorize the use of the elevator for carrying passengers. Defendant's special exception to plaintiff's first prayer, on the ground that there was no evidence of the right of the plaintiff to use the elevator, is not properly before us, because it is not contained in the bills of exception signed and sealed by the trial judge.

Finding no error, the judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided 15th March 1892.)