LOUIS CRANEY, Appellee, *vs.* THE UNION STOCK YARDS AND TRANSIT COMPANY.—(ERNEST SCHLOEMAN *et al.* Appellants.)

*Opinion filed June 16, 1909.*

1. NEGLIGENCE—*prospective buyer attending horse sale is not a mere licensee.* A prospective buyer attending a public sale of horses is not a mere licensee but is present upon the implied invitation of the person or persons holding the sale.

2. SAME—*when question of contributory negligence of a buyer in standing in ring is for the jury.* Whether a prospective buyer attending a public sale of horses was guilty of negligence in not using the elevated seats around the ring instead of standing in the ring, where he was run against and injured by a blind horse being led and whipped around the ring, is a question for the jury, where he did not know the horse was blind, although such fact was known to the person holding the sale, and his employees, but no public announcement of the fact was made.

3. SAME—*proof that employee had been told that the horse he was handling was blind is proper.* Where it is claimed by the plaintiff that the manner in which defendant's employee handled a horse in the auction ring was negligent in view of the fact that the horse was blind, proof that such employee had been told by another employee that the horse was blind and to look out or it would step on him is competent, as tending to show the employee's knowledge of such blindness.

4. SAME—*when fact that warning sign is displayed is without force.* The fact that a sign is displayed in a horse auction ring

warning people not to stand in the ring, and admonishing them that if they did so it was at their own risk, does not preclude a recovery for an injury received by a prospective buyer while standing in the ring, whether he knew of the sign or not, where the course pursued in making the sales rendered it necessary for buyers to be in the ring to examine the horses and amounted to an invitation to buyers to disregard the sign.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

This is an appeal by Ernest H. Schloeman and Al Ramp from a judgment of the Appellate Court for the First District affirming a judgment for the sum of $3500 recovered by Louis Craney, appellee, against appellants, in the circuit court of Cook county, in an action on the case for personal injuries alleged to have been sustained by appellee through the negligence of the appellants. The suit was originally brought against appellants and the Union Stock Yards and Transit Company.

The declaration alleged that defendants carelessly and negligently whipped a horse which they were offering for sale in a sale pavilion in the city of Chicago, causing it to become greatly excited, whereby the plaintiff, while attending said sale and in the exercise of due care for his own safety, was run against by said horse and injured. The general issue was interposed. At the close of the plaintiff's evidence, upon the motion of the Union Stock Yards and Transit Company, a verdict was returned by the jury finding it not guilty. The motions of Schloeman and Ramp for a peremptory instruction, offered at the close of all the evidence, were denied.

On August 5, 1902, the day on which appellee was injured, Ernest H. Schloeman was engaged in conducting a public horse sale in a building owned by the Union Stock

Yards and Transit Company, in the city of Chicago. In the building was a large open space, commonly designated a "ring," sixty or eighty feet in length north and south and twenty-five or thirty feet wide east and west, into which the horses were led and displayed before being offered for sale. At the north and south ends of the building were doors opening into the ring, and on the east and west sides of the ring tiers of seats were built, extending from the edge of the ring back up to the wall, for the convenience of buyers and those attending sales conducted in the building. Near the middle of the building, from north to south, on both the east and west sides of the ring, were two posts several feet apart, extending from the floor to the ceiling. Between the posts at the east side, extending back into the seats a short distance, the box or stand to be occupied by the auctioneer and clerk of the sale was constructed. When a horse was brought in for sale, usually it was trotted around the ring a time or two before the auctioneer would call for bids and the commission man conducting the sale would announce the guaranty under which the horse was to be sold, and at the same time a sign was displayed on the stand indicating what the guaranty was. When horses were being trotted around the ring, men with whips were employed to follow and keep them moving rapidly. As soon as the horse was stopped, prospective buyers would quickly gather around to inspect it. Horses were sold one at a time and at the rate of sixty or seventy an hour. In this manner sales had been conducted in this pavilion for a number of years and the sale was being so conducted by Schloeman on the day in question.

Appellee was engaged in the teaming business in the city of Chicago and was attending the sale for the purpose of buying horses if he found any that suited him. He had frequently attended the sales here and was entirely familiar with the manner in which they were conducted. When he entered the building the sale was either already in progress

or just beginning, and he took a position in the ring immediately in front of the post at the left side of the auctioneer's box, which, he testified, he considered the safer side of the ring. This position was the one usually occupied by him when he attended these sales. Soon thereafter a large blind horse, weighing 1300 or 1400 pounds, was led into the ring and the announcement was made by Schloeman that the horse would be "sold to wind and work," which meant that Schloeman guaranteed the horse's wind to be sound and that he would work properly. A sign containing the quoted words was also displayed on the stand. The evidence is sharply conflicting as to whether any announcement that the horse was blind was made. The man in charge of the horse started to lead it rapidly around the ring by the halter, and in order to make it move quickly, Ramp, the ring-master, who is one of the appellants and who was an employee of Schloeman, followed the horse, either striking it with his whip or cracking the whip near it, and other employees of Schloeman stationed alongside the ring cracked their whips at the horse as it went past them. When the horse was making the second round and was about opposite Craney it became unmanageable and bolted toward him. At this time there were a large number of men in the ring and a number of men standing on the seats immediately behind Craney, which prevented his getting out of the way quickly, and before he could step up on the seat near him the horse ran against him and crushed him against the post, inflicting severe injuries upon him.

Craney did not want to buy the horse that was being offered for sale at this time, and could have, had he so desired, occupied a position on the seats. The habit of bid-ders was to stand about in the ring, so that they could be near enough to the horse to observe it carefully. An employee of Schloeman by the name of Higgins was leading the horse immediately before the accident. The horse had been delivered to him to be taken into the ring by another

employee, named Anderson. Higgins, on the part of appellee, among other testimony, gave the following, to-wit:

"Anderson told me that the horse was totally blind and to look out for him,—that he would step on me. I examined the horse and I noticed that the horse was totally blind. I led the horse to the center of the ring, and Mr. Schloeman, the auctioneer, was in the auction box, and Mr. Ramp said that the horse is sound and right except a little off in the wind, and I says to Mr. Ramp, 'The horse is blind,' and Mr. Ramp says to me, 'Keep your mouth shut; take a short hold of him and don't mind.' So I went and winded the horse to the best of my ability. He said he was sound and right except a little off in the wind. I got a short hold of the horse's head and led him to the center of the auction ring. I led the horse north for to wind him. I turned him once and went south three successive times. Mr. Ramp was whipping the horse. I had the check on him and I had the rope attached to that. The halter check would be two and a half feet and the rope would be three feet. I told Mr. Ramp—I says, 'Ease up on the horse.' Mr. Ramp, as a rule, don't pay much attention to me. I was just losing control of the horse when I told him to keep the whip off the horse. He kept whipping the horse. I was coming on up and I lost control of the horse down the center of the ring. The horse got away from me and he was going right straight south. I had him by the head and I lost control of him and I ran into the end of the room, and while I hung on to the horse the horse got off at an angle and ran right into this man Craney and doubled him up against a post, and he kind of moaned round and swooped right down and fell onto the platform, right in line with the auction box. As the horse fell backwards I lost control of the horse. I couldn't hold him."

It is contended by appellants (1) that the motion for a directed verdict, made at the close of all the evidence, should have been allowed for the reason that it appears, as

a matter of law, that appellee was guilty of contributory negligence; (2) that such motion should have been allowed because appellee was a mere licensee; (3) that the court erred in admitting evidence; (4) that the court erred in passing on instructions; and (5) that the amount of the judgment is excessive.

WINSTON, PAYNE, STRAWN & SHAW, (JOHN D. BLACK, of counsel,) for appellants:

Appellee was a licensee, and took the license subject to the usual manner of conducting the business carried on by appellants. *Murray* v. *McLean*, 57 Ill. 378; *Hallyburton* v. *Fair Ass.* 119 N. C. 526.

MILES J. DEVINE, (JOHN T. MURRAY, of counsel,) for appellee:

One invited on premises by the owner or occupier is not a mere naked licensee. *Davis* v. *Congregational Society*, 129 Mass. 367; *Thornton* v. *Agricultural Society*, 53 Atl. Rep. 979; *Bennett* v. *Railroad Co.* 102 U. S. 577; *Fisher* v. *Jansen*, 30 Ill. App. 91.

If an owner or occupier of land, either directly or by implication, induces persons to come upon his premises, he thereby assumes an obligation that such premises are in a reasonably safe condition, so that the persons there by his invitation shall not be injured by them or in their use for the purpose the invitation was given. *Hart* v. *Washington Park Club*, 157 Ill. 13; *Davis* v. *Congregational Society*, 129 Mass. 367; *Bennett* v. *Railroad Co.* 102 U. S. 577; *Texas State Fair* v. *Brittain*, 118 Fed. Rep. 713; *Paukner* v. *Wakem*, 231 Ill. 276; *Calvert* v. *Light Co.* id. 290; *Franey* v. *Stock Yards Co.* 235 id. 522.

Printed notices of danger, which are nothing but attempts to make laws, are void as against public policy, in so far as they claim to operate as a contract against negligence. *Coal Co.* v. *Clark*, 197 Ill. 514.

A general objection to questions touching the admissibility of evidence is not sufficient. *Railroad Co.* v. *Rathneau*, 225 Ill. 279; *Railroad Co.* v. *Holland*, 122 id. 461.

Statements and declarations of the master's servants just prior to and connected with an accident are competent. *Railroad Co.* v. *Holland*, 122 Ill. 461.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In determining whether a verdict should have been directed we will state the facts as they are made to appear by the evidence most favorable to appellee. A public sale of horses was being conducted in the auction ring at the time he received his injuries and he was there for the purpose of buying. Under the circumstances he was not a mere licensee but was present by the implied invitation of appellant Schloeman, who was making the sale. (*Pauckner* v. *Wakem*, 231 Ill. 276.) He was injured by a blind horse that was being rapidly led and driven about the ring under the whip. The only control exercised over the horse was by leading him by a halter. Appellants knew the horse was blind; appellee did not. No public announcement was made of the fact that he was blind. It is insisted that appellee, as a matter of law, was guilty of contributory negligence in standing upon the ground at one side of the ring instead of taking one of the seats which extended along two sides of the ring and which were on a higher level than the ground in the ring. If appellee had known the horse was blind there would be great force in this position, but he was not aware of that fact. If the animal had been able to see it is not probable the accident would have occurred. We think the question whether appellee was guilty of contributory negligence was one of fact and not of law. The motion for a directed verdict, made at the close of all the evidence, was properly denied.

The man who was leading the horse at the time he was being whipped about the ring was an employee of Schloe-

man, named Higgins. As the horses were brought into the ring for sale they were led in by a man named Anderson. Evidence was admitted, over objection, from which it appears that Anderson told Higgins as he was delivering the horse to him that the horse was blind and to look out or it would step on him, and it is contended that this evidence was not competent. It was urged by appellee, among other things, that the manner in which Higgins handled the horse in the ring was negligent in view of the fact that the horse was blind. Under these circumstances it was material to show that Higgins had knowledge of the blindness. We think the evidence was properly admitted for that purpose.

One of the controverted questions of fact was whether, on the day of this injury, a sign was displayed in the ring warning people not to stand in the ring and admonishing them that if they did so it was at their own risk. Appellants asked an instruction to the effect that if this sign was displayed conspicuously plaintiff could not recover. That instruction the court modified by adding, as an additional element necessary to bar the right of plaintiff to recover, the fact "that plaintiff knew of said sign." Appellants complain of the modification. If this sign was, in fact, there, its effect upon the right of the plaintiff was not of the character indicated by this instruction, either in its original or modified form. The buyers could not inspect an animal in any satisfactory manner except they were in the ring. Horses were sold at the rate of one a minute. In that time the horse was led rapidly around the ring one or more times, examined by the bidders, offered for sale by the auctioneer, bids were called for, made and received, the horse was knocked down to the purchaser and led away. It was necessary for the buyers to be on the ground to examine the horses. Unless they stayed there between the time one horse was sold and bids were asked upon the next they would be without opportunity to examine the horse before the bidding began. The appellants, by the course they

pursued in making the sales, made it necessary for the buyers to be on the ground in the ring. The sign may have been posted, but if it was, the conduct of appellants was an invitation for bidders to disregard it. Under these circumstances the right of appellee to recover would not necessarily be barred by his knowledge that the sign in question was posted. The instruction should not have been given, either as asked or modified, for the reason that in either form it was more favorable to the appellants than it should have been.

Complaint is also made of the refusal of two instructions which stated to the jury that the plaintiff could not recover if he had been guilty of contributory negligence. This subject was fully covered by other instructions given.

Complaint is also made of the refusal of another instruction which was based on the theory that appellee was a mere licensee. That instruction was properly refused for reasons already indicated.

It is finally contended that the judgment is excessive. As we have so often said, this question is not open for consideration in this court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*