ARCHIE RIGGS, Appellee, v. PAN-AMERICAN WALL PAPER & PAINT COMPANY, Appellant.

No. 44460.

JANUARY 10, 1939.

Rippey & Seeburger, for appellant.

Cosson, Stevens & Cosson, for appellee.

MITCHELL, C. J.—Archie Riggs commenced this action against the Pan-American Wall Paper and Paint Company to recover damages, alleging that due to the negligence of the Paper Company he sustained injuries when he fell down an elevator shaft in the company's shipping room. There was a general denial and a plea of contributory negligence. The case was tried to the jury, which returned a verdict in the amount of $1,000. Defendant has appealed.

Riggs on the 30th day of October, 1935, was employed by the White Line Freight Company in the City of Des Moines. On the day mentioned he was directed by his employer to deliver a shipment of paint to the warehouse of the Paper Company, located at 1005 Locust Street. He had with him as assistant, Raymond Arbaugh. They arrived at the north entrance, which was on the alley, to make the delivery, about 1:30 in the afternoon. The paint was hauled in what was known as a tractor-trailer truck, which was eight feet wide, eleven feet high, and twenty-two feet long. The trailer part was backed squarely in front of the back door, the top of the trailer being about three feet above the top of the door. Arbaugh placed the cartons of paint at the rear of the truck and Riggs was to carry them in and place them in the warehouse where an employee of the company directed that they be placed. The cartons consisted of paper boxes of such size as to hold four gallon cans of paint. There is some dispute in regard to the exact size, but they were approximately one and a half feet square. Riggs was instructed to place the cartons near the elevator shaft, and to place them so that the label would be on the outside.

It is Riggs' claim that he had never before been in the building and that he did not know there was an elevator shaft in the room. However, there is evidence from which the jury could have found that he had made deliveries there some years before.

The building occupied by the Paint Company faces south. The offices are in the front part and there is a partition that separates the offices from the shipping room. The rear room is about nineteen feet wide from east to west, and about sixty feet long, north and south. There are no windows on the east and west sides, and none in the partition to the south, altho there is a door. There is a door in the north part of the shipping room, thru which the merchandise was being delivered. There are several panes of glass in the upper part of this door. In the north wall there are two windows. However, they are nine feet above the floor and are constructed of wire-glass. They had not been cleaned for some time, but, in the words of one of the employees of the appellant company, "they throw some light." There were electric lights in the room. Whether or not they were burning at the time of the accident, is in dispute. The elevator shaft was on the west side of the shipping room, fifteen feet and four inches from the north wall. The pit, or opening, was about four and a half feet square. It was protected by a railing, consisting of a single board, which looks, judging from the photograph that was introduced, to be a 2x4. This was thirty-two inches from the floor. At the east side this 2x4 was bolted at the north end and there was a slot in the south end so that the railing could be lifted when necessary. There was nothing between this 2x4 and the floor. There was no light in the basement at the time of the accident. The elevator was operated from the basement and there were no ropes or anything else above the railing. To the north of the elevator and abutting against the west wall was a table, referred to as a "wrapping table." The main part was a little higher than the guard rail. There was a solid back to this table on the south, which extended the full length of the north guard rail and about two feet above it. On the west side of this table there was a shelf, extending still higher, on which various articles of merchandise were stacked. To the east of this wrapping table, and parallel with it, was another small wooden table, about two feet wide and some five or six feet long. The southwest leg of this

table was close to the northeast corner of the elevator pit. Upon this small table were scales and other equipment used. Due to the position of these tables one could not see the elevator pit as he came thru the north door.

Riggs asked the employee of the Paper Company where to place the merchandise that he was delivering, and proceeded to do as directed. His story is that he picked up the first of the cartons of paint and walked over to the place where he was to put it, leaned over and placed it upon the floor, turned the case so that the label would be on the outside, and, as he straightened up he fell backwards into the pit; that he did not know there was an elevator shaft there; he did not see one; that the guard rail on the east side of the pit was not in place but was up in the air.

The appellant in this case does not raise the question of negligence. It rests its right to reversal mainly upon the proposition that Riggs was guilty of contributory negligence and therefore not entitled to recover.

In the case of Nelson v. F. W. Woolworth & Company, 211 Iowa 592, 231 N. W. 665, this court said at pages 602, 603 of 211 Iowa, page 669 of 231 N. W.:

"If it be assumed that appellant was an invitee as distinguished from a mere licensee, it is not entirely certain that he negligently contributed to his injury. A solution of the problem is to be found in the facts and circumstances. Conflicting questions of fact are to be settled by the jury. If the facts are not in conflict, and it is plain that appellant was guilty of contributory neligence, then the court should direct a verdict accordingly.

" 'The presence or absence of contributory negligence, generally speaking, is peculiarly a question for the jury, rather than the court, to detect and settle.' Murphy v. Iowa Elec. Co., 206 Iowa 567, local citation 571, 220 N. W. 361, 362.

"When considering appellant's contributory negligence, two elements are involved: First, What did the appellant do? Second, What was the effect of his action? Provided that either or both of said propositions present uncertainty, then there is a jury question concerning the existence of contributory negligence. While discussing this subject, we said in Murphy v. Iowa Elec. Co. 206 Iowa 567, supra, on page 572, 220 N. W. 360, 362:

" 'If there is a conflict in the evidence as to what the person accused of contributory negligence did or did not do, the question is then one for the jury. Likewise, even though it is known what was done by that individual in this regard, yet, if his conduct is such that there may fairly be different opinions with respect to it, and one man honestly and reasonably says it was in accord with ordinary prudence, while another, just as sincerely, and with equal reason, contends it was not, then there is a jury question. * * * Consistent, however, with the above and foregoing doctrine, and in no way in conflict therewith, is the additional theory that, "where facts are clear and undisputed," and the existence and effect of the plaintiff's contributory negligence sufficiently "apparent to every fair-minded and reasonable man, so that one conclusion may be fairly drawn therefrom," then the trial court may and should direct a verdict in the defendant's favor because thereof.' "

With this rule of law before us, let us examine the facts.

█ Riggs was delivering goods at the exact place and in the exact manner directed by appellant. He was an invitee. It was the duty of the appellant to furnish a safe place to come in the transaction of business and in the discharge of his duties.

█ There is a sharp dispute in the evidence in regard to the facts. It is Riggs' contention that he had never been in the shipping room before altho there were witnesses who said he had been. He contends there were no lights burning. Others testified that there were. It is his claim, and the record bears him out, that the only natural light that came into the store was that which came thru the two wire-glass windows that were nine feet above the floor, and whatever little light could filter in thru the door due to the fact that the trailer was backed squarely in front of it. By the erection of the wrapping stand and table to the north of the elevator the appellant had concealed the pit from one coming into the building thru the north entrance. The only protection against the elevator shaft was the rail, which was thirty-two inches from the floor and was constructed so that it could be raised from the south side. Riggs said that it was up. The employee of the appellant company said immediately after the accident, when he heard someone groaning and went over to the elevator shaft, the rail was in

place, but before he could see who was down in the pit it was necessary for him to turn on the lights in the basement. In view of this conflicting testimony the question was for the jury to determine which of these witnesses was telling the truth as to the exact conditions that prevailed in the shipping room on the afternoon of the accident. Did Riggs act as a prudent man in following the instructions of the employee of the appellant company, in taking. the cartons of paint to the place directed? In view of the conditions, to which he and his witnesses testified, provided in that shipping room, as to light and protection against the open pit of the elevator, Did Riggs act as a reasonable man ordinarily would act? With this direct conflict in the testimony as to what Riggs did or did not do, the question was for the jury to decide. No one can read this record and say that fair-minded and reasonable men could come to but one conclusion. The question was for the jury and the court was right in so submitting.

In the case of Gardner v. Separator Co., 134 Iowa 6, at pages 10, 11, 111 N. W. 316, at page 318, this court said:

"We think it was properly left to the jury to say whether there was negligence on the part of the plaintiff contributing to his injury, in view of the circumstances under which he fell into the elevator shaft. He had a right to assume, in opening the door through which he entered and in turning to close it after him, that he would be protected by barrier or warning against any danger immediately incident to his entrance through such door. It was certainly not conclusively negligence in him to turn after entering the door and close it behind him for the purpose of proceeding about the business for which he had been invited to come upon the premises. He was not bound to stop and look for danger, and, while it was his duty to use his faculty of sight as reasonably careful persons ordinarily do in going about their business, he was not bound to take any special precautions for his safety at this place. The cases relied upon by counsel for appellant are those in which it is said that one going into places not intended for the general use of persons invited to enter a building for business purposes must take precautions against dangers from stairways, openings, or obstructions. See Bedell v. Berkey, 76 Mich. 435, 43 N. W. 308, 15 Am. St. Rep. 370; Hutchins v. Priestly Wagon, etc., Co., 61 Mich.

252, 28 N. W. 85; Johnson v. Ramberg, 49 Minn. 341, 51 N. W. 1043; Gaffney v. Brown, 150 Mass. 479, 23 N. E. 233; Massey v. Seller, 45 Or. 267, 77 Pac. 397. But, on the other hand, it is well settled that persons rightfully in a building may go about for the purpose for which they have been invited to enter, assuming that reasonable precautions have been taken for their safety, and are not bound to especially look for dangers the existence of which would imply negligence on the part of the owner. Tousey v. Roberts, 114 N. Y. 312, 21 N. E. 399, 11 Am. St. Rep. 655; Engel v. Smith, 82 Mich. 1, 46 N. W. 21, 21 Am. St. Rep. 549; Pelton v. Schmidt, 104 Mich. 345, 62 N. W. 552, 53 Am. St. Rep. 462; Hendricken v. Meadows, 154 Mass. 599, 28 N. E. 1054; Brosnan v. Sweetser, 127 Ind. 1, 26 N. E. 555; People's Bank v. Morgolofski, 75 Md. 432, 23 Atl. 1027, 32 Am. St. Rep. 403. The court did not err therefore in leaving it to the jury to say whether under the circumstances plaintiff was guilty of contributory negligence.''

The appellant complains that the court erred in giving instruction No. 8. This instruction limited the purpose for which defendant's exhibit No. 1 was admitted. It was ''admitted only for the purpose of showing the general location of the elevator pit and the guard rails, as well as the door and the other surroundings, but you are instructed that said photograph must not be considered by you for the purpose of proving the condition of the light at the time of the accident nor with reference to the light conditions as they were and appeared to the plaintiff as he entered the shipping room from the north door in the act of delivering paint and at the time of the accident.''

It is hard for us to understand the complaint urged. The photograph was taken from the southeast corner of the room, looking directly at the elevator. Riggs entered thru the north door and the elevator shaft was concealed behind the wrapping table. No one claims that the lights in the room were the same at the time the photograph was taken as when the accident occurred. Riggs claims there were no lights in the shipping room at the time of the accident, and witnesses for appellant company claim there were. The photographer used a flashlight when taking the picture. No one claims there were flashlights being used when Riggs unfortunately fell into the elevator shaft.

In the case of Gose v. True, 197 Iowa 1094, 198 N. W. 528, this court answers the contentions of the appellant far better than the writer of this opinion could, when, speaking thru the late Justice De Graff, the court said at pages 1097, 1098, 198 N. W. at page 530:

"A photographer or other person may say that the picture represents things and conditions as he saw them; but unless the facts disclosed thereon were existent and the conditions were the same as at the time pertinent to the inquiry, its admissibility may be questioned. *A witness may lie; so may a photograph;* but neither is a ground for exclusion. A witness must have knowledge of the facts to which he testifies, and a photograph must be shown to have been made under conditions similar to those material to the inquiry to which it relates. The admission or rejection of a photograph in evidence is a matter addressed to the sound discretion of the court; and in the absence of an abuse of such discretion, the court's ruling will not be disturbed on appeal. Nolte v. Chicago, R. I. & P. R. Co., 165 Iowa 721, 147 N. W. 192. No prejudicial error is shown in the instant case in rejecting Exhibit D, under the facts disclosed."

In the case at bar the court admitted the photograph and rightly called attention in his instruction to the difference in the light conditions of the room at the time the photograph was taken and the time that Riggs was injured.

There are some other questions raised in regard to the admission of evidence, all of which have been given careful consideration. Finding no error, it necessarily follows that the case must be, and it is hereby, affirmed.—Affirmed.

All Justices concur.