Clyde A. Sawyer, Appellee, v. E. A. Lund, doing business
under the name and style of the E. A. Lund
Sales Stables, Appellant.

No. 45969.

June 16, 1942.

Senneff & Duncan, for appellant.

L. R. Boomhower, for appellee.

Sager, J.—The case, so far as it needs be stated, involves
only the questions of contributory negligence and assumption
of risk. There is no substantial dispute in the evidence. We
think that the trial court should have sustained appellant's mo-
tion to direct. Out of his own mouth appellee proved that he
assumed the risk of the position he voluntarily took in the sales
ring.

Appellant maintains a sales pavilion in Mason City in which
horses are sold. The actual selling is done in what is called
the "sales ring." This is approximately 13 feet by 34 feet in
dimension. Horses to be sold are led at a brisk pace about the

ring to enable prospective buyers to examine the animals offered. There are seats on two sides of the ring, but these were filled when appellee entered, so he took a position along the side with others. It appears that the standing room was very nearly taken, and appellee says that when the events to be narrated occurred he could not get out. Giving to his evidence, as we must do, all that could be claimed for it, the evidence is not of sufficient weight to justify finding against appellant.

If reasonable care and prudence would have suggested to appellee that he should not take the position he did, then he assumed the hazards of the sales ring. It will appear, we think, from what follows, that appellee is not entitled to recover unless we are to establish for the safety of mature adults who display no sign of incompetence the same safeguards that are thrown about children. This cannot be done except on the assumption that every adult engaged in activities the hazards of which he perfectly understands is a fit subject for protection by the court.

Appellee at the time of the trial was 50 years old and had been, and perhaps is yet, a breeder of horses. He had farmed 248 acres, using horsepower. He bought and sold on his own account, to use his expression, "quite a few" horses; in fact, he admitted that he was a "pretty good judge" of horses and knew how to handle them. The mission which took him to the sales barn was as a buyer for a neighbor. The manner in which sales were conducted was fully known to him, as he had attended sales there quite regularly. With this background, we turn to the record to see whether there is anything to justify a judgment in favor of appellee. We quote in part his own narrative as to what took place after he reached the sales barn:

"In the barn I saw a white horse standing with another one, standing in a stall. I was interested in him. There was no pole between him and the other horse. The horses faced the north and I was on the left side. There was an alley way in front of him about 10 feet wide. I put my hand on him and started into the stall between him and the other horse. This horse drew back his ears and crouched like he was going to kick so I backed out and went around in front of him. I grasped his halter rope to see his age; he reared back and would not

let me touch him. I then saw Elmer Lund and I said, 'Elmer, I was looking at that gray horse there. I started in side of him and he acted mean. I went around ahead to look at him and he reared back.'"

On cross-examination appellee said:

"I thought he was an unsafe horse to be around so I went around to his head. I thought he was a dangerous horse. I was afraid to go on in the stall because I thought he would kick me."

While appellee was in the position related above, the horse above described was brought into the ring and was promptly recognized by appellee. Succeeding events "happened in part of a minute," according to one witness; another testified that the horse came back "fairly fast;" another, that it was "pretty fast;" and another, that it was "too fast for me to be sure of the details." The horse had been "mouthed" by appellant, to use the horse buyer's expression, and represented sound as to wind and hitch. Thereupon one Grimm, another experienced horseman, took the horse by the mouth to examine it for himself. It is claimed by appellee that Grimm's manner of doing so was so rough as to cause the horse to back up, as stated above, and to kick appellee.

The case, then, hangs on this single thread: Was appellant negligent in failing to tell Grimm to let go? That was the only specification of negligence submitted to the jury. If Grimm should have been told to do so, appellee was in a better position to know that fact than was appellant, who had never seen the horse until it was brought into the ring. Appellee knew that the mouthing of horses was a common practice; Grimm was an experienced horseman, as was appellee. If the manner in which Grimm held the horse was too rough, which at best was a mere matter of opinion, appellee saw and understood all the danger inherent in the situation. And had appellant given such command it would have added nothing to appellee's ability to protect himself against the risk he took when he stationed himself within 12 or 15 feet of the place where he knew there was a dangerous horse to be mouthed and otherwise treated according to familiar practices of the sales ring. It may not be suc-

cessfully argued, under the facts above set out, that appellee did not assume the risk of such injury as might befall in his position in the sales ring.

Appellee cites of our own cases, these, among others: Murphy v. Iowa Elec. Co., 206 Iowa 567, 220 N. W. 360; Dickeson v. Lzicar, 208 Iowa 275, 225 N. W. 406; Zieman v. World Amusement Serv. Assn., 209 Iowa 1298, 228 N. W. 48; Nelson v. F. W. Woolworth & Co., 211 Iowa 592, 231 N. W. 665; Oestereich v. Leslie, 212 Iowa 105, 234 N. W. 229; Buchanan v. Hurd Creamery Co., 215 Iowa 415, 246 N. W. 41; Dennis v. Merrill, 218 Iowa 1259, 257 N. W. 322; Pazen v. Des Moines Trans. Co., 223 Iowa 23, 272 N. W. 126; Mescher v. Brogan, 223 Iowa 573, 272 N. W. 645; Bletzer v. Wilson, 224 Iowa 884, 276 N. W. 836; Riggs v. Pan-American Co., 225 Iowa 1051, 283 N. W. 250; Blessing v. Welding, 226 Iowa 1178, 286 N. W. 436; Gillespie v. Gentosi, 229 Iowa 356, 294 N. W. 586; Latham v. Des Moines Electric Co., 229 Iowa 1199, 296 N. W. 372.

Of the foreign citations only one needs attention—Craney v. Union Stock Yards & Transit Co., 240 Ill. 602, 88 N. E. 1046. This, at first sight, would seem to be some authority, but on examination will be found to be distinguishable. There plaintiff was not familiar with the fact that the horse was blind, and defendants were well aware of it, so much so that one of the employees who spoke of it was ordered to keep his mouth shut. In the process of being whipped around the ring the blind horse crushed plaintiff against a post, with resulting damages.

We mention only a few of appellant's citations. None do more than establish principles applicable to the facts under consideration. Parrack v. McGaffey, 217 Iowa 368, 251 N. W. 871; Reimer v. Musel, 217 Iowa 377, 251 N. W. 863; Boles v. Hotel Maytag Co., 218 Iowa 306, 253 N. W. 515; Coakley v. Dairy Cattle Congress, 228 Iowa 1130, 293 N. W. 457.

With this disposal of the case we need to discuss none of the propositions advanced in argument.

The case is reversed.—Reversed.

MILLER, HALE, STIGER, and WENNERSTRUM, JJ., concur.

GARFIELD and OLIVER, JJ., dissent.

BLISS, C. J., takes no part.