## SMALTZ *v.* NEWHOF.

1. TRIAL—INCONSISTENT POSITIONS—BILL OF PARTICULARS.

Where plaintiff filed a bill of particulars showing a balance due for labor and materials in plastering houses belonging to defendant, and crediting defendant with payments on account, and where the defendant in his testimony claimed that he had made one payment of $500 on the account presented, and plaintiff admitted receiving that amount but claimed it paid a previously existing indebtedness for labor and services, testimony tending to establish his contention was not improperly received, nor was it so inconsistent with the opening statement of counsel for plaintiff, who admitted that plaintiff had received $200 to pay other indebtedness and to apply on the account, as that the court should have excluded the testimony; where it also appeared that the defendant had given no notice of the defense with his plea and plaintiff was first advised of the claim by amendment of the plea at the trial and by evidence in support of the claimed payment.

2. EVIDENCE—BOOKS OF ACCOUNT—ADMISSIBILITY—REFRESHING RECOLLECTION OF WITNESS.

It was not error to admit in evidence plaintiff's account

book, kept in his own handwriting, showing the number of yards of plastering for which plaintiff claimed a judgment, the book being received only for the purpose of refreshing the recollection of the witness.

3. PAYMENT—TRIAL—INSTRUCTIONS.

Where plaintiff brought suit to recover for certain plastering, and the defendant had paid $500 on the account, claiming, however, that he had paid the $500 before a given day, while the plaintiff claimed that the payment took place at a later time, and should be credited upon a previously existing debt, the court did not err in charging the jury that if they should find that the claim of plaintiff had been paid except a small balance and $500 was paid afterwards by defendant, plaintiff was overpaid, and on the other hand, if there was no payment on the houses included in plaintiff's bill of particulars, the plaintiff would be entitled to recover; and the jury was not likely to be misled by instructions that if the previous indebtedness due to plaintiff was paid up before he began the work for which he sued, and $500 was afterwards paid, he could not recover.

Error to Kent; Brown, J. Submitted November 26, 1913. (Docket No. 127.) Decided January 5, 1914.

Assumpsit by Noah A. Smaltz against Thomas Newhof for labor, materials, etc. Judgment for plaintiff. Defendant brings error. Affirmed.

*Wilson & Johnson,* for appellant.

*Horace T. Barnaby (John J. McKenna,* of counsel), for appellee.

KUHN, J. The bill of particulars in this action was filed January 11, 1912, and is as follows:

November 18, to December 10, 1909.  Material
  and labor for lathing and plastering house
  on boulevard, opposite John Ball Park, 680
  yards at 19c per yard...................... $129 20
Paid on this account........................   66 70
                                             ————
Balance due on this account................. $ 62 50

February 5, to 25, 1910. Material and labor for lathing and plastering house at corner of Shawmut avenue and boulevard, 675 yds. at 19c per yard........................... $128 25

March 3, to 20, 1910. Material and labor for lathing and plastering house on Shawmut avenue, a little east of the house last above mentioned, 680 yards at 19c per yard........ 129 20

March 12, to 31, 1910. Material and labor for lathing and plastering house on the north side of Shawmut avenue, nearly opposite the house last above mentioned, 680 yards at 19c per yard........................... 129 20

Total.......................... $449 15

The plea filed by the defendant was the general issue and notice of set-off and recoupment. During the trial of the cause, the plea of set-off was withdrawn and the pleadings amended by giving notice of payment. At the close of plaintiff's proofs, counsel for defendant made a motion to direct a verdict for the defendant, for the following reasons:·

"*First.* Mr. Barnaby, the attorney for the plaintiff, in his opening statement, stated that there had been a payment by Mr. Newhof of $200 at about the time the first house on the boulevard was commenced, which amount paid all of the former debts, everything, and $66.70 on that first house, leaving a balance on that house of $62.50.

"*Second.* This statement of Mr. Barnaby was corroborated by the testimony of the plaintiff himself, and was to the same effect.

"*Third.* The undisputed testimony is that, after the payment of $200 referred to by Mr. Barnaby in his opening statement, that there was $500 paid by Mr. Newhof and received by plaintiff.

"*Fourth.* The bill of particulars shows that including the $62.50 balance due after the first payment of $200 referred to by Mr. Barnaby in his opening statement, that the amount claimed in this action is $449.15. Therefore the admission by the plaintiff's attorney in the opening statement, corroborated by the testimony of the plaintiff himself, and the fact

that the amount claimed in this action as shown in the bill of particulars is only $449.15, and the fact that payments amount to $500 were made subsequent to November 18, 1909, shows conclusively that this claim has been paid and, in fact, overpaid, and leaves no question for the jury to determine."

The motion was denied by the court, and the controversy was submitted to the jury, who rendered a verdict in favor of the plaintiff for the sum of $515.59, which was the amount claimed in the bill of particulars, with interest.

The first question raised upon this appeal is stated in the brief for defendant, as follows:

"It was error to allow the plaintiff to shift his ground from the issue stated in the bill of particulars, and in the opening statement of plaintiff's attorney, by permitting the introduction of testimony at variance with the bill of particulars and said opening statement."

Plaintiff urges that this question is not before the court because it was not raised by assignment of error. The third assignment of error, which is, "The court erred in overruling the motion to direct a verdict for the defendant, to which the attorney for the defendant then and there excepted," it seems to us, properly raises the question, and we shall consider it. However, we are of the opinion that there is no merit in this contention, as the record does not show that the plaintiff shifted his position. It was his claim when the bill of particulars was filed that the defendant owed him $449.15. This was the claim of counsel in his opening statement to the jury. The record does not contain the entire statement of counsel, but he did state that while the plaintiff was doing the work on the house opposite John Ball Park, defendant made a payment of $200 or thereabouts, which paid all of the former debts and $66.70 on that job, leaving a balance of $62.50. This statement is in accord with the bill of particulars, and was correct,

with the exception of the time of payment of the $200, the exact time of which he did not fix. It is the claim of the defendant that $500 was paid subsequent to November 18, 1909, and that these payments extinguished the indebtedness. It is conceded that payments were made by check as follows: December 4, 1909, $100, January 7, 1910, $200, and February 19, 1910, $200. On cross-examination the plaintiff testified that he received payment by check of $200 on or about November 18, 1909. It is apparent upon reading the record that plaintiff was confused about this date, and that no payment by check was made to him at that time. The $200 check referred to was undoubtedly the one which he received on February 19, 1910. If a check had been given on or about November 18, 1909, the defendant would have been able to produce it, as the other checks were produced, as is shown by the following:

"*Mr. McKenna:* You said something about a check in November. Mr. Wilson, have you got those checks?

"*Mr. Wilson:* The check in November—you have the checks there, the three checks. I have a check the latter part of September of $200."

When the plea of set-off was withdrawn and amendment giving notice of payment was allowed, the plaintiff was permitted to show that on November 18, 1909, the defendant owed plaintiff a considerable balance for work he had done on 13 other houses, and the payment of the $500 extinguished this indebtedness and applied $66.70 on the boulevard house opposite John Ball Park. It is the claim of the plaintiff that when they opened their case they had no notice of payment, and did not suppose it would be claimed that the $500 payments were to be applied on the four houses mentioned in the bill of particulars. Plaintiff has contended from the first that defendant was obligated to him for work on the four

houses. It was when notice of payment was given that he attempted to show that the payments claimed were for other labor and services. This, it seems to us, was entirely proper for him to do. It is true that a plaintiff cannot start and try a case on one theory and then completely abandon that theory and adopt another entirely inconsistent with the former. That was not done ·in the instant case. *Humphrey* v. *Transportation Co.,* 115 Mich. 420 (73 N. W. 422).

Exception is taken to the admission of an account book in evidence, for ·the following reasons, as stated by appellant:

"*First.* Said book of accounts does not contain all credits; therefore it is not a complete record of ac-count between plaintiff and defendant.

"*Second.* It does not appear to be a book of original entries.

"*Third.* Entries of all items were not made in this book, but only the balance due was written down by the plaintiff as the payments were made.

"*Fourth.* An examination of the book shows that it does not explain itself, and it does not appear on its face what, if any, amount is due from defendant."

The plaintiff testified that he kept the book himself in his own handwriting and that he made the entries while he was doing the work, and further stated:

"I kept an account with my dealings with Mr. Newhof. I have got the yards down that we plastered for him. I put it in the book at the time the 'work was done and at the time I got the bill from the lather stating that there was so many yards in the house. I never measured the houses at all. I would just take the number of yards from what the lather made out of them. When I received his bill I made the entry on this book, and I am refreshing my memory . from this book in which I made those entries. I commenced work on the first house on the west side on about November 18, 1909. My contract on that house was 19 cents a square yard. Mr. Newhof paid me on the first house on the west side on the boulevard $66.70. I have the bills that the lather gave me at home, but

not with me. When I talked with Mr. Newhof about the plastering I told him how many yards was in each house. I went to see Mr. Newhof shortly after I finished the four houses. I didn't give him a bill. I stated to him the amount and gave him the number of yards in each house, but I don't think I told him the amount which was due for the number of yards in each house, but told him the total amount on the four houses. Mr. Newhof refused to pay it at the time, though I can't remember the exact words used at the time. It was after finishing the houses that I saw Mr. Newhof and went for some money. I didn't ask him for any certain amount. I told him how much he owed me and gave him the number of yards in each house and the lathers' statements.

"*Q.* Gave him the aggregate sum that he was to pay for that?

"*A.* Yes, sir.

"*Q.* What did he say?

"*A.* Well, he said he wouldn't pay me then for that there, but he had a house up on Sigsbee street that he had begun, and when he got that done, and sold that he would pay me every cent I had coming."

Plaintiff also showed by witness Spamen that he lathed the houses sued for, and that the account was correct. At the time the book was offered in evidence, the court said:

"*The Court:* I think you had better offer the book in evidence for the purpose of refreshing his recollection, and it did not go any further than that at the time."

This was not error. *Baxter* v. *Reynolds,* 112 Mich. 471 (70 N. W. 1039) ; *Cameron Lumber Co.* v. *Somerville,* 129 Mich. 552 (89 N. W. 346), and cases therein cited; 17 Cyc. p. 366.

Complaint is also made of the charge of the court, it being claimed that the trial judge treated an undisputed and admitted fact, the payment of the $500, as a doubtful or open question. The portion of the charge which gives rise to this criticism is as follows:

"If you should find from the testimony in the case that the claim of the plaintiff was paid, all but $62.50, including the first boulevard house, and the $500 was paid after that time, that would overpay the claim of the plaintiff. * * * If you should find in this case that the check or payment of $200 which was paid to the plaintiff, which has been referred to in the testimony, as the payment made in November, or upon the boulevard house, if you find that that was the last payment made by the defendant, and that it paid all that was due at that time with the exception of $62.50 due on the boulevard house, and that after that time all this other amount accrued, these other three houses, and that there was no payment made upon the balance of $62.50 and the subsequent three houses which were built, if you find that from the evidence in the case, by a fair preponderance of the evidence in the case, then the plaintiff would be entitled to recover $449.15 from March 31, 1910, at 5 per cent. If you should find in the case that the last payment made by the defendant of $200—that the payment made by the defendant which was applied on the boulevard house paid all that was due before that, and $66.70 on the boulevard house, leaving a balance of $62.50, and that after that time these other three houses were built, and that the amount paid after that time was $500, as shown by the three checks here offered by the defendant, then the amount due for these three houses and the balance on the boulevard house would be less than $500 and the account would be fully paid."

There was no question but that $500 was paid after November 18, 1909. It was admitted on the trial by everybody who knew anything about it, and was treated as an established fact. The only question was, Was this $500 paid after the old account had been paid up, and $66.70 on the last four houses? When the court said, "And the $500 was paid after that time, that would overpay claim of plaintiff," it is reasonable to conclude that he was leaving it to the jury to find whether or not the $500 was paid after the old account was all paid up, and the $66.70 on the

last four houses, and treated as an established fact that $500 had been paid. Taking it in its entirety, we do not think the jury was misled by the judge's charge.

Judgment is affirmed.

MCALVAY, C. J., and BROOKE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. STONE, J., did not sit.